27 N.J. Super. 54 (1953)
98 A.2d 623
THE LIONEL CORP., ETC., PLAINTIFF,
v.
GRAYSON-ROBINSON STORES, INC., ETC., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 26, 1953.
*56 Mr. Samuel Voltaggio for the plaintiff.
*57 Mr. Meyer E. Ruback for the defendant (Messrs. Ruback, Albach & Weisman, attorneys; Mr. Sidney A. Diamond and Messrs. Roosevelt, Freidin & Littauer, of the New York Bar, of counsel).
FREUND, J.S.C.
This proceeding brought by The Lionel Corporation, seeks to enjoin the defendant, Grayson-Robinson Stores, Inc., from selling or offering for sale "Lionel Trains" or "Lionel Products," manufactured by the plaintiff at less than the list prices established by the plaintiff. The action is brought under the New Jersey Fair Trade Act, R.S. 56:4-3 et seq., and under the McGuire Act, 66 Stat. 632, 15 U.S.C.A., sec. 45. The defendant has moved for summary judgment as a matter of law.
The complaint and affidavits submitted on the motion palpably show that there is no genuine issue as to any material fact. The following facts are gleaned from the pleadings: The plaintiff, a corporation of the State of New York, authorized to do business in this State, is engaged in interstate commerce, manufacturing toy electric trains under the trade name of "Lionel," and has a price-fixing policy which it endeavors to maintain by means of retail price maintenance agreements and by prices listed in its catalogs. The defendant, a corporation of the State of California, authorized to do business in this State, owns a nation-wide chain of retail stores  one in the City of Newark. The policy of the defendant is to operate its stores on a self-service, cash-and-carry basis, and to sell its merchandise at minimum prices. The defendant asserts that it has never entered into any "fair trade" contract and it has been stipulated that it has no contract with the plaintiff.
The plaintiff has entered into price maintenance agreements with retailers in this State, of which fact it alleges the defendant had notice. The defendant denies having notice but admits it did offer for sale and sold the plaintiff's products at less than the stated list prices, and insists on its right to do so.
*58 The plaintiff contends that the McGuire Act, supra, has encompassed nonsigners and that the defendant's practice of price-cutting, with notice of the plaintiff's price maintenance contracts, constitutes violation of the New Jersey Fair Trade Act, entitling it to an injunction. R.S. 56:4-3 et seq.
In opposition, the defendant presents many points, among them that the New Jersey Fair Trade Act and the federal McGuire Act, insofar as they attempt to bind nonsigners, are unconstitutional: (1) being in violation of the due process clauses of the Fifth and Fourteenth Amendments to the Federal Constitution and of Article I, Section I, of the State Constitution, because they deprive the defendant of its property right to sell merchandise at the price it sees fit; and (2) because they unlawfully delegate to private persons, manufacturers and producers, the power to fix prices of commodities not affected with a public interest, without any standards or regulations governing the exercise of the delegated power.
The plaintiff urges that state fair trade statutes were declared to be valid by the United States Supreme Court in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109 (1936), and that thereupon the courts of this State upheld the constitutionality of our Fair Trade Act and enjoined nonsigners from selling below fixed prices. Johnson & Johnson v. Weissbard, 121 N.J. Eq. 585 (E. & A. 1937). Further, that the defendant is asking this court to overrule these decisions. The defendant concedes that the Court of Errors and Appeals held that our statute did not violate the due process clause, but argues that the court did not pass upon its constitutionality on the issue of unlawful delegation of legislative power. The defendant urges that, to the extent that the United States Supreme Court has not overruled the Old Dearborn case by its decision in Schwegmann Bros. v. Calvert Distillers Corporation, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, 19 A.L.R.2d 1119 (1951), this court is free to disregard it; and that the validity of the McGuire Act has not been *59 passed upon by the Supreme Courts of either the United States or of this State.
The historical background of fair trade legislation and decisions pertaining thereto, including the Schwegmann case, are set forth in the opinions of this court and of the Supreme Court of New Jersey in Hoffmann-LaRoche, Inc., v. Weissbard and Johnson & Johnson v. Charmley Drug Co., 19 N.J. Super. 210 (Ch. Div. 1952), affirmed 11 N.J. 541 and 526 (1953). Here, it will suffice to say that price-fixing agreements were illegal as against public policy. Ingersoll v. Goldstein, 84 N.J. Eq. 445 (Ch. 1915); prohibited as restraints of trade under the Sherman Anti-Trust Act, 26 Stat. 209, c. 647; 15 U.S.C.A., sec. 1 (1890), and held violative of the Federal Trade Commission Act, 38 Stat. 717, c. 311, 15 U.S.C.A., sec. 41 (1914). Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1922). However, in 1936, the United States Supreme Court in the Old Dearborn case, supra, upheld the validity of state fair trade statutes sanctioning agreements for retail price-fixing with reference to trademarked or branded commodities sold in fair and open competition with other commodities of the same general class, binding also upon retailers not parties to the contract who had notice of the price agreement. The purported purpose of fair trade statutes is to protect owners of trademarked goods, or distributors, who have built up a good-will for the product, from injurious practices.
In 1937, in order to implement state fair trade acts and to alleviate the proscriptions of the Sherman Anti-Trust Act upon price-maintenance agreements valid under local law, Congress enacted the Miller-Tydings Amendment to the Sherman Act, Title VIII, 50 Stat. 673, 693, c. 690, 15 U.S.C.A., sec. 1. That amendment provides immunity from the ban of the Sherman Act for "contracts or agreements prescribing minimum prices for the resale" of specified trademarked or branded commodities "when contracts *60 or agreements of that description are lawful as applied to intrastate transactions" under local law. However, the immunity is limited to "vertical" and not to "horizontal" price-fixing by those in competition with each other at the same functional level. The latter continue to be prohibited by the Sherman Act. The New Jersey Fair Trade Act has a nonsigner clause, which was lacking in the Miller-Tydings Amendment. Following the Old Dearborn case, our courts in numerous cases enjoined nonsigners from failing to adhere to price stipulations of the manufacturer. See cases cited in Hoffmann-LaRoche, Inc. v. Weissbard, 19 N.J. Super. 210, at page 215.
In Schwegmann Bros. v. Calvert Distillers Corp., supra, the United States Supreme Court held that the Miller-Tydings Amendment immunized only contracts or agreements prescribing minimum resale prices of trademarked commodities in interstate commerce, and that a retailer who had not signed a contract for price maintenance could not be subjected to price observance since the amendment did not encompass noncontracting retailers. On the authority of this case, injunctions against nonsigners were denied in Hoffmann-LaRoche, Inc. v. Weissbard, supra, and Johnson & Johnson v. Charmley Drug Stores, supra, and injunctions which had previously been issued were vacated. Johnson & Johnson v. Weissbard, and Burroughs Welcome & Co. (U.S.A.), Inc., v. Weissbard, 11 N.J. 552 (1953).
To overcome the effect of the decision in the Schwegmann case, Congress, on July 14, 1952, adopted the McGuire Act as an amendment to the Federal Trade Commission Act, 15 U.S.C.A., Sec. 45. It purports to include nonsigners within the immunity granted by the Miller-Tydings Act. The pertinent section reads as follows:
"(3) Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for sale, or selling *61 any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale or selling is or is not a party to such contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby." 15 U.S.C.A., sec. 45, (a).
Paragraph (4) of the same subsection of the McGuire Act provides that the exercise or enforcement of any right of action under the state statute or public policy should not "* * * constitute an unlawful burden or restraint upon, or interference with, commerce."
Reverting to the arguments of the defendant, I do not consider that the United States Supreme Court has by the Schwegmann decision reversed its decision in the Old Dearborn case. That tribunal has not hesitated to reverse itself whenever the situation demanded, and to say so unequivocally. Nor is it necessary to review the constitutionality of our Fair Trade Act upon ostensible new grounds now raised by the defendant. The court of last resort of our State having upheld its constitutionality, it must presently be assumed to be constitutional on all grounds; and if perchance the act be invalid for reasons not yet argued, such a ruling may be made by the court of last resort upon an appropriate presentation.
Admittedly, both the plaintiff and the defendant are engaged in interstate commerce. The New Jersey Fair Trade Act was intended to apply and applies only to intrastate transactions. Hence, if the plaintiff is to prevail, it must be under the McGuire Act. The issue is whether that statute which purports to include nonsigners within the amendment to the Federal Trade Commission Act and which was intended to supply this deficiency in the Miller-Tydings Act, has effectively overcome the obstacles indicated by the Supreme Court of the United States in the Schwegmann case. Can a court of equity lawfully compel a non-assenting retailer to submit to a price-fixing schedule contained in an agreement or contract between a manufacturer of a trademarked commodity and other retailers? Has the pre-Schwegmann concept of the binding effect upon nonsigners *62 been revitalized, or does the interpretation of the opinion in the Schwegmann case preclude such a conclusion?
Courts of other jurisdictions which have considered the validity of the McGuire Act are in conflict. It was held valid in Eli Lilly & Co. v. Schwegmann Bros. Giant Super Markets, 109 F. Supp. 269 (E.D. La. 1953); General Electric Co. v. S. Klein-on-the-Square, Inc., 121 N.Y.S.2d 37 (N.Y. Sup. Ct. 1953); Cal-Dak Co. v. Sav-on Drugs, 254 P.2d 497 (Cal. Sup. Ct. 1953). It was declared unconstitutional by the Supreme Court of Georgia in Grayson-Robinson Stores, Inc. v. Oneida, Ltd., 209 Ga. 613, 75 S.E.2d 161 (1953), and state fair trade acts were held unconstitutional by the Supreme Courts of Michigan and Florida in Shakespeare Co. v. Lippmann's Tool Shop Sporting Goods Co., 334 Mich. 109, 54 N.W.2d 268 (1952) and Liquor Store, Inc. v. Continental Distilling Corp., 40 So.2d 371 (Fla. 1949). In the absence of any decision by the United States Supreme Court or the New Jersey Supreme Court, an independent interpretation may be made.
As was observed in Hoffmann-LaRoche, Inc. v. Weissbard, 19 N.J. Super. 210, there are valid and forceful economic arguments on all sides of the question of the social desirability of fair trade laws. Under fair trade, the price level is probably higher than would obtain under active price competition. The wisdom of fair trade from the social aspect is at least debatable, even though uneconomical in a particular sense. A court is concerned with legality, not social, economic or political philosophy  those considerations are for other forums. It is trite to say that "competition is the life of trade." Competition, whether desirable or not, must be lawful, as is clearly indicated by the many laws which give redress when it is unlawful. Suppression of competition is incompatible with the precepts of a free society. However, price-fixing as an incident to the good-will of a trademarked or branded commodity has been held to be lawful by the decision in the Old Dearborn case. But even a lawful end may not be accomplished by unlawful *63 means, and price adherence may be secured lawfully only through voluntary agreement.
In my view, the Supreme Court of the United States did not reverse its decision in the Old Dearborn case by its ruling in the Schwegmann case  the two opinions are to be read together. In the later case, the court emphasized that price-fixing agreements are valid so long as they are obtained through contract or agreement. What is rendered illegal is compulsory subjection to price adherence. The full significance of the opinion is missed if we fail to grasp from its dynamic phrases the categorical directive that only those who have contracted or agreed, expressly or impliedly, or who have otherwise voluntarily consented, to be bound, may be held to price observance. This is the theme repeated throughout the opinion and demonstrated by the following excerpts [341 U.S. 384, 71 S.Ct. 747]:
"When they seek * * * to impose price fixing on persons who have not contracted or agreed to the scheme, * * * that is price fixing by compulsion. That is not following the path of consensual agreement; that is resort to coercion, * * * price maintenance * * * is limited to voluntary engagements.
Contracts or agreements convey the idea of a cooperative arrangement * * *, not a program whereby recalcitrants are dragged in by the heels and compelled to submit to price fixing. * * *
* * * we cannot find that the distributors were to have the right to use not only a contract to fix retail prices but a club as well."
I am led to the conclusion that a court of equity may not issue an injunction to compel a non-contracting, non-assenting retailer to adhere to a price-fixing schedule established by a manufacturer or producer of a commodity not affected by a public interest, and that to that extent the McGuire Act is ineffective. This result renders it unnecessary to advert to the other points raised by the defendant.
Judgment accordingly.