122 MAIN STREET CORP. *vs.* CITY OF BROCKTON.

Plymouth.   October 6, 7, 1948. — February 4, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Zoning.   Brockton.*

An amendment of the zoning ordinance of the city of Brockton, providing
   that in a defined "central business area" in the heart of the city no
   building should be erected or altered to a height of less than twenty-
   seven feet or with less than two stories, had no reasonable relation to
   any of the objects constituting the bases for zoning ordinances set
   forth in G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269,
   § 1, and was invalid.

PETITION, filed in the Land Court on May 15, 1947.

The case was heard by *Cotton*, J.

*H. C. Gill*, City Solicitor, for the respondent.

*R. W. Meserve*, (*H. B. Coleman* with him,) for the petitioner.

WILKINS, J.   The holder of a freehold estate in possession
in the city of Brockton, by this petition under G. L. (Ter.
Ed.) c. 240, § 14A, and c. 185, § 1 (j ½), both inserted by
St. 1934, c. 263, seeks a determination as to the validity of
two amendments to the city's zoning ordinance purporting
to establish a central business area and to fix minimum
height requirements for buildings in that area.   The case
was heard on a statement of agreed facts amounting to a
case stated.   The city appeals from the judge's decision,
wherein he ruled the amendments to be invalid.

In 1926 a zoning ordinance and "use districts map"
divided the city into four use districts: residence, business,
industry, and unrestricted.   At the same time a "bulk
districts map" was adopted placing in district "A" sub-
stantially the areas designated as industry and business
on the "use districts map."   Included in district "A"
(and shown in the "use districts map" as a business dis-
trict) is a narrow strip running about four and one half

miles along both sides of Main Street. The widest part, near the middle of the strip, is about one and one half miles long and one thousand feet wide. From this widest part an area about two thousand feet long and sixty feet wide is affected by the amendments in question, which were adopted in 1946.

One amendment to c. 34 of the Revised Ordinances of 1926 of the City of Brockton added to § 7 (a): "The said district A shall be further divided so that such part of said district A located on or adjoining Main Street, between the southerly side of Belmont Street and the northerly side of Pleasant Street, shall be known as the central business area." The other amendment added to § 8: "In the central business area no building shall be erected nor shall any existing building be altered to a height of less than twenty-seven feet . . . nor shall any building therein be erected or altered so that it shall be of less than two stories above the street level of which each of the first two stories shall be at least sixty (60) feet deep except on corners of accepted street where the said depth shall be not less than seventy-five (75) feet."

The population of Brockton is about sixty-five thousand. An additional two hundred thousand shoppers from surrounding municipalities are attracted to the central business area, which lies in the heart of the city. Six blocks in length with traffic stop lights at each cross street, it is the busiest section of Main Street for all types of traffic. Bus movements reach one hundred an hour between 4 P.M. and 6 P.M. Most of the buildings in the area may be described as old, and are two or more stories in height.

The petitioner's property is at 122 Main Street at the corner of School Street, and at least a portion of it is within the central business area. On it there are several buildings (all but the rear part of one being not less than two stories high) which the petitioner desires to demolish in order to permit the erection of a one-story brick building. The city contends that the zoning law amendments preclude such action.

General Laws (Ter. Ed.) c. 40, § 25, as appearing in St.

1933, c. 269, § 1, provides: "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants, any city, except Boston, and any town, may by ordinance or by-law regulate and restrict the height, number of stories, and size of buildings and structures, the size and width of lots, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. For any or all of such purposes such an ordinance or by-law may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of sections twenty-five to thirty A, inclusive, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings and structures, or use of land, and may prohibit noxious trades . . .. Such regulations and restrictions shall be designed among other purposes to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; and to increase the amenities of the municipality. Due regard shall be paid to the characteristics of the different parts of the city or town, and the ordinances or by-laws established hereunder in any city or town shall be the same for zones, districts or streets having substantially the same character; and such regulations and restrictions shall be made with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city or town."

The authority of the city to amend the zoning ordinance, as well as originally to enact it, is measured by the enabling act. *Caires* v. *Building Commissioner of Hingham, ante,* 589, 594. Some of its enumerated purposes are expressed in such general and broad terms that it should be comparatively easy to demonstrate that an ordinance which pur-

ports to promote the public welfare by changing the zoning regulations serves at least one of them. *Leahy* v. *Inspector of Buildings of New Bedford,* 308 Mass. 128, 131, 132. Every presumption is to be indulged in favor of the ordinance. *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52, 62. *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73, 75. If the question whether the height limitations will result in a real and genuine enhancement of the public interests is fairly debatable, we cannot substitute our judgment for that of the municipality. *Simon* v. *Needham,* 311 Mass. 560, 564. *Foster* v. *Mayor of Beverly,* 315 Mass. 567, 572. But this court will not enforce a plainly invalid exercise of the power conferred. *Lexington* v. *Govenar,* 295 Mass. 31, 34.

This is a case of first impression in this Commonwealth. But, where the question has arisen elsewhere, it may be stated as a general proposition that the enactment of such a zoning regulation has uniformly not been upheld. *Brown* v. *Board of Appeals of Springfield,* 327 Ill. 644. *Romar Realty Co.* v. *Board of Commissioners of Haddonfield,* 96 N. J. L. 117. *Brookdale Homes, Inc.* v. *Johnson,* 123 N. J. L. 602; affirmed 126 N. J. L. 516. *State* v. *Stahlman,* 81 W. Va. 335. See *Mobridge* v. *Brown,* 39 S. D. 270; 58 Am. Jur., Zoning, § 49.

The city states in its brief "that it would have been futile to argue that a one-story building would best serve, in any way, the purposes of the public health, the public safety, or the public morals, as those purposes are commonly understood." It contends, however, that the amendment does best serve the public welfare. The particular grounds suggested are, for the most part, vague, and some merely paraphrase the enabling act. It is said that the city council considered that the amendments would encourage the most appropriate use of land, and would facilitate the adequate provision of transportation and other public requirements; and that it desired to increase the amenities of the municipality, and had in view the conserving of the value of buildings. It is somewhat more specifically argued that if the character of this part of Main Street should be changed by

the erection of one-story buildings, thereby dispersing the occupants of the upper stories, it would impose a great burden upon the city and its people; that it would deprive a hard pressed city of taxable revenue; that from an aesthetic sense the presence of a one-story building alongside buildings of three and four stories "would create the effect of a carnival town," and would destroy the symmetry of the center of the city; and that, in short, the purpose of the amendments is to ensure a reasonable permanency to the character of the district in conformity with its initial establishment.

In *Welch* v. *Swasey*, 193 Mass. 364 (affirmed 214 U. S. 91), it was said, "With considerable strictness of definition, the general welfare may be made a ground, with others, for interference with rights of property, in the exercise of the police power" (page 373). "The inhabitants of a city or town cannot be compelled to give up rights in property . . . for purely aesthetic objects; but if the primary and substantive purpose of the legislation is such as justifies the act, considerations of taste and beauty may enter in, as auxiliary" (page 375). See *Opinion of the Justices*, 234 Mass. 597, 604; *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 184–185.

It is not within the scope of the act to enact zoning regulations for the purpose of assisting a municipality to retain or assume a general appearance deemed to be ideal, or to inflate its taxable revenue. These objectives overleap any reasonable conception of the conservation of the value of property. See *Tranfaglia* v. *Building Commissioner of Winchester*, 306 Mass. 495, 503–504. As to many other purposes for which, the statute states, among others, such regulations shall be designed, the minimum height requirements would lead to consequences contrary to those purposes. Included in these are the purposes to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to provide adequate light and air; to prevent the overcrowding of land; and to avoid undue concentration of population.

It has been said that where there is legislation lessening

the value of property due to a permissible restriction on its use, the owner suffering in this way must be held to be compensated by the general benefit to the community of which he is a member. *Opinion of the Justices*, 234 Mass. 597, 610–611.   Conversely, it may be said that where legislation seeks to force land to remain vacant unless the owner will erect a structure of at least two stories or of a height of at least twenty-seven feet, or will not permit him to remodel an existing structure except upon the same conditions, the general benefit to the community must be something more tangible and less nebulous than any supposed advantages which the city has been able to bring forward in this case. The amendment placing a minimum height requirement on new or altered buildings in the central business zone would deprive the petitioner and other landowners similarly situated, and hence the community, of a normal use of their property without accomplishing in any reasonable degree one legitimate purpose for which zoning is authorized.   See *Pittsfield* v. *Oleksak*, 313 Mass. 553, 555.

It follows that the amendment to § 8 of the Revised Ordinances of 1926 of the City of Brockton is void.   While the amendment to § 7 (a), establishing the central business zone, may be futile standing by itself, it is nevertheless innocuous and is not invalid.

The decision of the judge is modified by declaring that only the amendment to § 8 is invalid, and as so modified, the decision is affirmed.

*So ordered.*