GENERAL ELECTRIC COMPANY *vs.* KIMBALL JEWELERS, INC.

Suffolk.   January 4, 1956. — March 7, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Fair Trade Law. Contract*, Fair trade contract, Consideration, Validity. *Unfair Competition. Equity Jurisdiction*, Plaintiff's clean hands. *Waiver. Constitutional Law*, Fair trade law, Delegation of powers.

Contracts between a manufacturer of appliances bearing its trade mark and retail dealers engaged in the sale of such appliances, entered into by the parties in order "to avail themselves of the fair trade acts and the acts of Congress" and to be in effect until terminated by either party upon ten days' written notice, whereby the dealers agreed not

to sell the appliances at less than the manufacturer's listed fair trade prices and the manufacturer agreed to give the dealers prompt written notice of changes in items and prices listed, were not lacking in consideration. [669–671]

Fair trade contracts between a manufacturer of appliances bearing its trade mark and retail dealers whereby the minimum prices at which the dealers should sell such appliances were stipulated were not outside the protection of the fair trade law, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as amended, applying to any contract "relating to the sale or resale of a commodity," on the ground that the manufacturer did not sell such appliances directly to the dealers and had not contracted with wholesalers, to whom it did sell such appliances, to require purchasers from them to maintain the manufacturer's prices. [671–672]

Fair trade contracts between a manufacturer of trade marked appliances and retail dealers in such appliances stipulating the minimum retail prices at which the dealers should sell them were not invalid under the fair trade law, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as amended, by reason of a provision in the contracts that the stipulated prices should not apply to sales made to the manufacturer's employees or to sales by the dealers to their own employees or to sales to governmental agencies or to commercial or institutional establishments buying for their own use and not for resale. [672–673]

A manufacturer of appliances bearing its trade mark could not be deemed a "retailer" thereof within the provisions of G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as amended, and the McGuire act, U. S. C. (1952 ed.) Title 15, § 45 (a), forbidding price maintenance contracts between retailers, by reason of sales of such appliances by the manufacturer to its own employees and to others which were merely incidental and accessory to its manufacturing business or by reason of sales by the manufacturer to a wholesale distributor which, although a division of a corporation wholly owned by the manufacturer, also dealt in similar appliances of other producers and was dealt with by the manufacturer on the same basis as the manufacturer dealt with other wholesale distributors. [673–674]

Nothing in a statement of agreed facts filed in a suit brought by a manufacturer under the fair trade law, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as amended, to enjoin one conducting a so-called "discount house" from selling at retail the plaintiff's trade marked appliances at prices lower than the minimum retail prices stipulated in fair trade contracts between the plaintiff and other retail dealers, to which the defendant was not a party, disclosed any conduct on the part of the plaintiff with respect to permitting competitors of the defendant to sell at less than such prices or with respect to the plaintiff's methods of investigation and of enforcing observance of such prices which barred maintenance of the suit on the ground of unclean hands or waiver of the plaintiff's rights. [674–675]

The Massachusetts fair trade law, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as amended, so applied as to give a manu-

facturer of trade marked appliances sold in fair and open competition with like appliances produced by others a right to an injunction against a retail dealer from selling the manufacturer's appliances at retail for prices lower than the minimum retail prices fixed in contracts between the manufacturer and other retail dealers, even though the defendant dealer was not a party to any such contract, and the McGuire act, U. S. C. (1952 ed.) Title 15, § 45 (a), extending immunity from the Federal antitrust acts to the enforcement of such right given to the manufacturer by the Massachusetts law, are not unconstitutional.  [675–677]

BILL IN EQUITY, filed in the Superior Court on December 8, 1953.

The suit was reported by *Lurie*, J., without decision.

*Warren F. Farr*, (*George C. Caner, Jr.*, with him,) for the plaintiff.

*John D. O'Reilly, Jr.*, & *Maurice Caro*, for the defendant.

*Joseph P. Healey*, by leave of court, submitted a brief as amicus curiae.

RONAN, J.  This is a suit brought by the plaintiff under the fair trade law, so called, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as most recently amended by St. 1943, c. 40, to enjoin the defendant from selling at retail the plaintiff's trade marked appliances at prices lower than the minimum retail prices stipulated in fair trade contracts in effect between the plaintiff and a large number of retail dealers in this Commonwealth.  The suit was presented on a stipulation in the Superior Court, and the judge without making any decision reported it to this court.

The plaintiff, General Electric Company, hereinafter called "GE," manufactures and sells many products including small electric appliances such as housewares, clocks, automatic blankets, fans, and heating pads, all of which bear its trade mark "General (GE) Electric."  These small appliances are sold in fair and open competition with commodities of the same general class produced by others. The plaintiff has expended large sums in promoting and advertising these products and has established a valuable reputation and good will for them and its trade mark.

The plaintiff in order to protect its good will and its trade mark has entered into approximately two hundred fifty written contracts with retail dealers in this Commonwealth under which it has stipulated the minimum retail resale prices for its appliances.

The defendant (hereinafter referred to as Kimball) conducts "a discount house," so called, where customers can obtain nationally advertised merchandise at a discount. Kimball has no fair trade agreement with the plaintiff, but since March, 1953, Kimball has known that the plaintiff has entered into contracts with other retailers and the minimum prices stipulated in their contracts with GE. Kimball nevertheless has sold and intends to continue to sell the small appliances produced and trade marked by the plaintiff below the minimum prices stipulated in these dealers' contracts and currently in effect.

The defendant first challenges the fair trade contracts made between GE and the other retailers. These contracts are the means by which GE establishes a fair trade price and if they are invalid the suit must be dismissed. The defendant next contends that GE having waived damages is barred by certain conduct such as abandonment, acquiescence, and other similar conduct, from obtaining injunctive relief. The defendant finally contends that our fair trade law and the McGuire act passed by Congress to aid the enforcement of the State fair trade laws are both for various reasons null and void.

## I.

We first consider the validity of the contracts which GE has with the retail dealers in this Commonwealth. They are the fundamental basis of this suit. This is not a suit to enforce one of these contracts against Kimball because the latter never signed any contract. So far as Kimball is concerned these contracts are the price fixing devices employed by GE in fixing fair trade prices, and such prices become binding against a retailer who wilfully and knowingly sells at a price less than that fixed in these

contracts as provided for by § 14B of c. 93, our fair trade law.

The plaintiff since September, 1952, which was about two months after the enactment of the McGuire act, U. S. C. (1952 ed.) Title 15, § 45 (a), and up to the time of the hearing in the Superior Court had made about two hundred fifty contracts with retail dealers in this Commonwealth. It does such a large business in these small electrical appliances that it has established a division separate from and independent of its various other branches. It contends that these contracts comply with our fair trade statute, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, inserted by St. 1937, c. 398, as amended by St. 1943, c. 40. Section 14A in so far as material provides that no contract relating to the sale or resale of a commodity which bears, or the container of which bears, the trade mark, brand or name of the producer or owner and which commodity is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the Commonwealth by reason of any of the following provisions which may be contained in such contract: "(1) That the buyer will not resell such commodity except at the price stipulated by the vendor. (2) That the producer or vendee of a commodity require upon the sale of such commodity to another, that such purchaser agree that he will not, in turn, resell except at the price stipulated by such producer or vendee." The dealer need not comply with the contract under certain conditions as in closing out his stock in trade for the purpose of discontinuing delivery, or when the goods are damaged or deteriorated in quality, or where sales are made by an officer acting under a court order. Section 14B prohibits one from wilfully and knowingly selling below the fair trade price even if he is not a party to one of these fair trade contracts.

The contracts with the retail dealers were not lacking in consideration. The fair trade law permits producers of trade marked commodities to protect their trade marks and good will from damage resulting from cut rate com-

petition by fixing the prices at which their merchandise may be resold by the dealers. The law does not define the form or contents of these contracts. It simply provides that the contract shall not be declared to be unlawful if it contains two clauses which we have already mentioned. The statute does not require the producer to assume any particular obligation to the dealer. Both parties as stated in the written contracts were motivated by a desire "to avail themselves of the fair trade acts and the acts of Congress." The dealer acknowledged receipt of the list of fair trade prices on GE products and agreed not to sell the products at less than those listed prices.

The contract fixes no definite period for its duration other than that it shall continue in effect from its date until terminated by either party upon ten days' written notice to the other. General Electric at least promises that while the contract is in force, that is, until ten days after written notice, it will not withdraw any of its products from its fair trade list or change the listed price without giving prompt notice to the dealer in writing by personal delivery or by mail. This is an obligation which General Electric assumed by virtue of its contract, however slight the obligation may be regarded by those not engaged in the trade. It was important for the dealer to be kept informed of any changes in the fair trade prices of the General Electric products. Indeed, the plan could not operate until General Electric undertook to keep the dealers informed of the current prices. A discount dealer no longer in securing General Electric products will be likely to encounter the difficulties previously experienced by a nonsigner dealer. The contract gives the dealer the benefit of the price support afforded by General Electric's price lists — not only the one attached to the contract but any subsequent ones while the contract is in effect. The furnishing of a current price list is the mainspring that continues the operation of the scheme. See *Doyle* v. *Dixon,* 97 Mass. 208, 213; *Wit* v. *Commercial Hotel Co.* 253 Mass. 564, 572–573. It was held in *Chandler, Gardner & Williams, Inc.* v. *Reynolds,* 250 Mass. 309, which was

a suit in equity to enforce the restrictive provisions of a contract of employment where the employer reserved to itself the exclusive privilege of discharging the employee, that the contract of employment did not lack consideration. It has been settled that contracts similar to the one introduced in evidence in this case are supported by sufficient consideration. *Houbigant Sales Corp.* v. *Woods Cut Rate Store,* 123 N. J. Eq. 40, 43–44, 47–48. *General Electric Co.* v. *Masters, Inc.* 307 N. Y. 229, appeal dismissed sub nomine *Masters, Inc.* v. *General Electric Co.* 348 U. S. 892. *General Electric Co.* v. *S. Klein-on-the-Square, Inc.* 121 N. Y. Sup. (2d) 37. *Seagram Distillers Co.* v. *Corenswet,* 198 Tenn. 644, 652–653. Williston, Contracts (Rev. ed.) § 102. The execution of the contract by the dealer might well have been thought to be a benefit to him, otherwise he would not have signed it. He might well have thought that the making of the contract would tend to free him from cut rate competition, or lessen the competition, in one branch of his business and that the more signers the plaintiff secured in the trade area served by the dealer the better it would be for the dealer. The dealer executed the contract freely and voluntarily and secured for his own benefit the establishment of a fair trade program.

The fact that the plaintiff could immediately add to, diminish or withdraw the items contained in the price list of articles it furnished while the dealer could terminate the contract upon ten days' notice would not render the contract invalid if valid in other respects. *Preston* v. *American Linen Co.* 119 Mass. 400, 404. *Eliopoulos* v. *Makros,* 322 Mass. 485, 488.

The fair trade law, § 14A, provides that a contract shall not be deemed illegal if it contains these clauses, to wit: "(1) That the buyer will not resell such commodity except at the price stipulated by the vendor. (2) That the producer or vendee of a commodity require upon the sale of such commodity to another, that such purchaser agree that he will not, in turn, resell except at the price stipulated by such producer or vendee." GE does not sell directly to

dealers and, so the defendant says, GE was not a party "vendor" relative to the buyer or dealer when it joined in making the contract fixing the minimum prices. Paragraph numbered (2) is inapplicable, so the defendant says, because GE has not contracted with the wholesalers, to whom it does sell, to require purchasers from them to maintain GE's prices. It must be remembered that involved in the sale to the customer is an article which includes the manufacturer's trade mark. It well may be that it was this trade mark of the plaintiff that induced the sale. A fair trade contract may be made between a producer and a retailer who do not trade directly with each other. The statute applies not only to contracts between the parties, but to any contract "relating to the sale or resale of a commodity," whether the sale is between the parties or not, because the object is to protect the trade mark, brand or name of the producer or owner, whoever makes the sale. *General Electric Co.* v. *Masters, Inc.* 307 N. Y. 229, appeal dismissed sub nomine *Masters, Inc.* v. *General Electric Co.* 348 U. S. 892. *General Electric Co.* v. *Sabreen,* 128 Fed. Sup. 900. *Seagram Distillers Co.* v. *Corenswet,* 198 Tenn. 644.

The price lists attached to the contracts signed by the dealers provide that "The indicated retail prices do not apply to sales made to employees of the General Electric Company or to sales by distributors or dealers of these products to their own employees, or to sales to governmental agencies or to commercial or institutional establishments buying for their own use and not for resale." GE also sells its appliances to its employees at its plant at Lynn. The defendant contends that this practice violates the fair trade law. Section 14A provides that no contract relating to a sale of a commodity shall be null and void because it contains price maintenance provisions. That law leaves it optional with a producer whether or not he will come within its ambit. If he decides to come within its sweep, he may select which of his different trade marked appliances he will place within the protection of the statute. *Columbia Records, Inc.* v. *Goody,* 278 App. Div. (N. Y.) 401. It is pointed

out that while GE may stipulate the prices at which the dealer is required to resell the electric appliances bearing its trade mark, the dealer by virtue of § 14A may sell at less than the contract in closing out sales of his stock, sales of damaged goods, or sales made under a court order. It is implicit, so urges the defendant, that as to commodities like those in question other than in these enumerated instances the dealer must comply with the prices fixed by his contract. We infer that all fair trade contracts with the dealers contain the same provisions permitting sales to their employees at less than the fixed minimum and hence there is no discrimination between them. Sales of trade marked appliances to the producer's own employees, to employees of distributors or of retailers, and to governmental agencies at prices below those stipulated in the contracts with the retailers are not expressly forbidden by our fair trade law. That course of business must have proven advantageous to the producer. The point now raised by the defendant was presented but not decided in *General Electric Co.* v. *Masters, Inc.* 307 N. Y. 229, appeal dismissed sub nomine *Masters, Inc.* v. *General Electric Co.* 348 U. S. 892, although the defendant was enjoined. This same contention of the defendant was rejected in *General Electric Co.* v. *Monarch-Saphin Co. Inc.* 80 N. Y. Sup. (2d) 419, and *General Electric Co.* v. *S. Klein-on-the-Square, Inc.* 121 N. Y. Sup. (2d) 37. Other courts have refused to strike down as inconsistent with fair trade laws contracts granting exemptions to certain classes more or less similar to the exemption provisions of the price lists attached to the contracts. *Burroughs Wellcome & Co. (U. S. A.) Inc.* v. *Weissbard,* 129 N. J. Eq. 563, affirmed 130 N. J. Eq. 605. *Burroughs Wellcome & Co. (U. S. A.) Inc.* v. *Johnson Wholesale Perfume Co. Inc.* 128 Conn. 596. *Schill* v. *Remington Putnam Book Co.* 179 Md. 83. *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.* 118 Fed. Sup. 541. *General Electric Co.* v. *Federal Employees' Distributing Co.* 45 Cal. (2d) 914.

It is next argued that the sales of its appliances to its

employees and others which have been mentioned constitute the plaintiff a retailer and that both the fair trade act and the McGuire act forbid price maintenance contracts between retailers. The plaintiff is a producer or manufacturer, and the sales in question are merely incidental and accessory to that business. *Wellesley College* v. *Attorney General*, 313 Mass. 722, 732–733. *Collins* v. *Kidd Dairy & Ice Co.* 132 Fed. (2d) 79. *Magnolia Petroleum Co.* v. *Broken Bow*, 184 Okla. 362. Neither can the plaintiff be deemed a retailer because the General Electric Supply Company (hereinafter referred to as Gesco) is a division of the General Electric Distributing Corporation, a Delaware corporation, which is wholly owned by the plaintiff. Gesco is a wholesale distributor of GE small appliances and also similar appliances of other manufacturers. The plaintiff deals with Gesco upon the same contractual basis as with other wholesale distributors. Gesco maintains branches throughout the United States. Our fair trade law and the McGuire act prohibit contracts "between producers or between wholesalers or between retailers as to the sale or resale prices" or, in other words, horizontal price fixing agreements between persons at the same competitive level. *Eastman Kodak Co.* v. *Schwartz*, 133 N. Y. Sup. (2d) 908.

It follows that the fair trade contracts made by GE with respect to its trade marked appliances fixing the minimum prices at which the retailers shall sell these commodities are not invalid.

## II.

The defendant contends that certain inequitable conduct on the part of the plaintiff bars it from injunctive relief. The defendant set up in its answer and contends that the plaintiff does not come into court with clean hands in that it claims that the plaintiff has permitted retail dealers competing with the defendant to sell at less than the minimum prices fixed by the fair trade contracts; that it permitted its own distributors to sell at less than such prices; and that its allowance of exemptions to its employees and insti-

tutions from fair trade prices fixed by said contracts is unlawful. This last objection has already been discussed. An examination of the statement of agreed facts discloses nothing that will support any conduct upon the part of the plaintiff that will justify any claim of unclean hands. *MacCormac* v. *Flynn*, 313 Mass. 547, 549–550. *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 66. The method employed by the plaintiff in investigating and enforcing the prices at which retail dealers were bound to sell their trade marked appliances was not unreasonable or dilatory, or such as to lead anyone to believe that the plaintiff had waived or abandoned its right to enforce the minimum retail resale prices which had been fixed by its fair trade contracts. *Calvert Distillers Corp.* v. *Stockman*, 26 Fed. Sup. 73. *Sunbeam Corp.* v. *Marcus*, 105 Fed. Sup. 39. *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.* 118 Fed. Sup. 541. *Revere Copper & Brass, Inc.* v. *Grayson-Robinson Stores, Inc.* 120 Fed. Sup. 258. *General Electric Co.* v. *S. Klein-on-the-Square, Inc.* 121 N. Y. Sup. (2d) 37. *Calvert Distillers Corp.* v. *Nussbaum Liquor Store, Inc.* 166 Misc. (N. Y.) 342. *Donner* v. *Calvert Distillers Corp.* 196 Md. 475.

## III.

The defendant finally contends that the McGuire act, U. S. C. (1952 ed.) Title 15, § 45 (a), and our fair trade law, G. L. (Ter. Ed.) c. 93, §§ 14A–14D, are not valid. On this issue the defendant assumes the burden of showing the absence of any conceivable ground upon which these enactments may be supported. *O'Gorman & Young, Inc.* v. *Hartford Fire Ins. Co.* 282 U. S. 251, 257–258. *Pacific States Box & Basket Co.* v. *White*, 296 U. S. 176, 185. *Merit Oil Co.* v. *Director of the Division on the Necessaries of Life*, 319 Mass. 301, 305. It is not within our province to pass upon the wisdom of an enactment. If the question is fairly debatable we cannot substitute our judgment for that of the Legislature. *Simon* v. *Needham*, 311 Mass. 560, 564. *122 Main Street Corp.* v. *Brockton*, 323 Mass. 646, 649.

The McGuire act is valid. The fair trade acts of Illinois and California were upheld in *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.* 299 U. S. 183, and *Pep Boys, Manny, Moe & Jack of California, Inc. v. Pyroil Sales Co. Inc.* 299 U. S. 198, as applied to nonsigners. It was subsequently held in *Schwegmann Brothers v. Calvert Distillers Corp.* 341 U. S. 384, that the Miller-Tydings act, which had amended the Sherman act, applied only to cases where the parties litigant had entered into contracts made under State fair trade laws and had not amended the Sherman act to such an extent as to permit an action against nonsigners. To permit full play to the fair trade laws of States, immunity from the Sherman law which had been granted by the Miller-Tydings law to a limited degree was extended by the McGuire act to nonsigners. The precise contention of the defendant that the *Old Dearborn* case has been discredited by *Schwegmann Brothers v. Calvert Distillers Corp.* 341 U. S. 384, was rejected in *Schwegmann Bros. Giant Super Markets v. Eli Lilly & Co.* 205 Fed. (2d) 788, 792–793, certiorari denied 346 U. S. 856, petition for rehearing denied 346 U. S. 905. *General Electric Co. v. Klein,* (Del. Ch.) 106 Atl. (2d) 206. *Lionel Corp. v. Grayson-Robinson Stores, Inc.* 15 N. J. 191. *General Electric Co. v. Masters, Inc.* 307 N. Y. 229. Appeals in the last two cases were dismissed by the Supreme Court of the United States "for the want of a substantial federal question." 348 U. S. 859; 348 U. S. 892. It has recently been stated in substance that no Federal constitutional difficulty exists in enforcing State fair trade laws. *Seagram-Distillers Corp. v. New Cut Rate Liquors, Inc.* 221 Fed. (2d) 815, 820, certiorari denied sub nomine *New Cut Rate Liquors, Inc. v. Seagram Distillers Corp.* 350 U. S. 828. *Lee-Wilson, Inc. v. General Electric Co.* 222 Fed. (2d) 850, 854. *Sunbeam Corp. v. Masters of Miami, Inc.* 225 Fed. (2d) 191, 194.

Our fair trade law was adopted here in 1937 by St. 1937, c. 398, following the trend of other jurisdictions which originated in 1931 in California. The California statute was upheld in *Pep Boys, Manny, Moe & Jack of California, Inc.*

v. *Pyroil Sales Co. Inc.* 299 U. S. 198. Trade marks, trade names, and the good will in connection with them, which has frequently been acquired at considerable expense by various means of advertising, had been recognized before the adoption of the fair trade law here as valuable property rights which the owner is entitled to have protected from those who would wrongfully impair their value. The producer of a trade marked article which is of a class in open competition may fix the price at which the retailer may sell. *Garst* v. *Harris*, 177 Mass. 72. *Garst* v. *Charles*, 187 Mass. 144. *Associated Perfumers, Inc.* v. *Andelman*, 316 Mass. 176. Where the question has been presented it has been decided in the great majority of cases that State fair trade statutes are valid and not contrary to the State or Federal Constitution.[1]

The fair trade law does not constitute an unlawful delegation of power to the owner of the trade mark or brand. It was said in *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* 299 U. S. 183, 194, "We find nothing in this situation to justify the contention that there is an unlawful delegation of power to private persons to control the disposition of the property of others . . . ." See also *Ely Lilly & Co.* v. *Saunders*, 216 N. C. 163; *Johnson & Johnson* v.

---

[1] *Max Factor & Co.* v. *Kunsman*, 5 Cal. (2d) 446, affirmed sub nomine *Kunsman* v. *Max Factor & Co.* 299 U. S. 198. *Burroughs Wellcome & Co. (U. S. A.) Inc.* v. *Johnson Wholesale Perfume Co. Inc.* 128 Conn. 596. *General Electric Co.* v. *Klein*, (Del. Ch.) 106 Atl. (2d) 206. *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* 363 Ill. 610, affirmed sub nomine *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* 299 U. S. 183. *Pepsodent Co.* v. *Krauss Co. Ltd.* 200 La. 959. *Goldsmith* v. *Mead Johnson & Co.* 176 Md. 682. *W. A. Sheaffer Pen Co.* v. *Barrett*, 209 Miss. 1. *Lionel Corp.* v. *Grayson-Robinson Stores, Inc.* 15 N. J. 191, appeal dismissed sub nomine *Grayson-Robinson Stores, Inc.* v. *Lionel Corp.* 348 U. S. 859. *General Electric Co.* v. *Masters, Inc.* 307 N. Y. 229, appeal dismissed sub nomine *Masters, Inc.* v. *General Electric Co.* 348 U. S. 892. *Ely Lilly & Co.* v. *Saunders*, 216 N. C. 163. *Federal Cartridge Corp.* v. *Helstrom*, 202 Ore. 557. *Burche Co.* v. *General Electric Co.* 382 Pa. 370. *Miles Laboratories, Inc.* v. *Owl Drug Co.* 67 S. D. 523. *Seagram Distillers Co.* v. *Corenswet*, 198 Tenn. 644. *Sears* v. *Western Thrift Stores of Olympia, Inc.* 10 Wash. (2d) 372. *Weco Products Co.* v. *Reed Drug Co.* 225 Wis. 474. Compare *Miles Laboratories, Inc.* v. *Eckerd*, Fla., 73 So. (2d) 680; *Shakespeare Co.* v. *Lippman's Tool Shop Sporting Goods Co.* 334 Mich. 109; *Grayson-Robinson Stores Inc.* v. *Oneida Ltd.* 209 Ga. 613; *Cox* v. *General Electric Co.* 211 Ga. 286; *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.* 118 Fed. Sup. 541; *McGraw Electric Co.* v. *Lewis & Smith Drug Co. Inc.* 159 Neb. 703.

*Weissbard,* 121 N. J. Eq. 585; *Burche Co.* v. *General Electric Co.* 382 Pa. 370; *Weco Products Co.* v. *Reed Drug Co.* 225 Wis. 474.

The States were permitted to exercise authority over transactions in interstate commerce in so far as they came within their fair trade statutes by virtue of the McGuire act just as, when insurance was found to be interstate commerce, the regulation and taxation were permitted to remain with the States. *Prudential Ins. Co.* v. *Benjamin,* 328 U. S. 408. Our law on its face extended to nonsigners of fair trade contracts and there was no necessity for reënacting it after the decision in *Schwegmann Brothers* v. *Calvert Distillers Corp.* 341 U. S. 384, holding that the enforcement of fair trade statutes against nonsigners in interstate transactions had not been exempted from the anti-trust laws by the Miller-Tydings act. *General Electric Co.* v. *Masters, Inc.* 307 N. Y. 229, 240–241. *Commonwealth* v. *Nickerson,* 236 Mass. 281, 306. *In re Rahrer, petitioner,* 140 U. S. 545, 564–565. We think that the plaintiff is entitled to an injunction restraining the defendant from selling the plaintiff's small appliances at lower prices than those now or hereafter permitted in its fair trade agreement with other retailers. The plaintiff is to have costs.

*So ordered.*