SHULTON, INC. *vs.* CONSUMER VALUE STORES, INC.

Middlesex.    April 4, 1967. — June 6, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& REARDON, JJ.

*Fair Trade Law. Unfair Competition. Waiver. Corporation,* Foreign
corporation. *Interstate Commerce. Words,* "Fair and open competi-
tion."

In a suit in equity brought by a manufacturer under the Fair Trade Law,
G. L. c. 93, §§ 14A–14D, subsidiary findings by a master as to the retail
prices of the plaintiff's trade marked after shave lotions and the retail
prices of other producers' after shave lotions warranted the master's
general finding that the plaintiff's lotions were "in 'fair and open com-
petition with commodities of the same general classes' produced by
others," and the final decree rightly enjoined the defendant, a retailer,
from selling the plaintiff's lotions at prices lower than the minimum
retail prices stipulated in fair trade contracts between the plaintiff and
other retailers, to which the defendant was not a party.    [607–608]
In a suit in equity brought by a manufacturer under the Fair Trade Law,
G. L. c. 93, §§ 14A–14D, a general finding by a master that approxi-
mately two hundred of the plaintiff's trade marked cosmetics, toilet
articles, and similar commodities sold at retail were "in 'fair and open
competition with commodities of the same general classes' produced by
others" and sold at retail was not warranted where specific subsidiary
findings by the master as to the competition faced by the plaintiff's
products other than its after shave lotions were lacking [608–609]; an
admission by the defendant, through its failure to deny the facts alleged
in a notice to admit facts filed by the plaintiff pursuant to c. 231, § 69,
as amended, that the plaintiff's products "have been in competition with
commodities or products of the same general class produced by others"
did not supply the facts needed to support the master's general finding.
[609–610]
In a suit in equity brought by a manufacturer under the Fair Trade Law,
G. L. c. 93, §§ 14A–14D, to enjoin a retailer from selling the plaintiff's
products at retail at prices lower than the minimum retail prices stipu-
lated in fair trade contracts between the plaintiff and other retailers, to
which the defendant was not a party, a master's general finding that
"the plaintiff's enforcement program and activities are adequate, dili-
gent, consistent and made in good faith" was supported by the master's
subsidiary findings with respect to the activities of, and results obtained
by, the plaintiff's attorney in charge of enforcement and a shopper sent
out by it to check on violations of its fair trade prices.    [610–611]  ·

Subsidiary findings by a master in a suit in equity by a foreign corporation which manufactured cosmetics, toilet articles, and similar commodities in foreign States and had no office, telephone listing or bank account in Massachusetts and owned no property here, but had its salesmen here to sell its products to many customers here, including retailers having fair trade contracts with the plaintiff entered into here on forms prepared in its home office in a foreign State, and whose sales were only on orders approved at its home office and filled by shipments made from one of its foreign factories and paid for by remittances direct to its home office, warranted the master's general findings that the plaintiff was engaged solely in interstate commerce, that all its activities here were matters incidental to, or reasonably necessary for, the conduct of such commerce, and that the qualification requirements of G. L. c. 181 did not apply to it. [611–612]

BILL IN EQUITY filed in the Superior Court on July 3, 1963.

The suit was heard by *Ponte, J.*, on a master's report.

*Paul R. Sugarman* for the defendant.

*Edward L. Schwartz (Benjamin Nesson* with him) for the plaintiff.

WILKINS, C.J.   This bill in equity by a New Jersey corporation, which is engaged in the manufacture, distribution, and sale of cosmetics, toilet articles, and similar commodities bearing the trademark, ''Shulton,'' is brought to enjoin the defendant, a Massachusetts corporation, from offering to sell or selling the plaintiff's products at prices lower than the minimum sale or resale prices set by the plaintiff in its fair trade contracts with other retailers in the Commonwealth.   The defendant, also a retailer, is not a party to such a contract, but having received notice of the ''fair trade'' prices set by the plaintiff, it could not thereafter sell Shulton products below the retail price stipulated in Shulton's contracts (G. L. c. 93, § 14B)[1] unless the plaintiff failed to meet certain conditions required of a seller who seeks to invoke the Fair Trade Law.   The defendant contends that the plaintiff has not met three of these condi-

---

[1] § 14B (as amended through St. 1939, c. 313). ''Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the preceding section, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is hereby declared to constitute unfair competition and to be actionable at the suit of any person damaged thereby.''

tions : (1) The plaintiff's commodities are not "in fair and open competition with commodities of the same general class produced by others" (§ 14A).[1]  (2) The plaintiff's enforcement policy is inadequate. *General Elec. Co. v. Kimball Jewelers, Inc.* 333 Mass. 665, 674–675.  (3) The plaintiff is doing business in the Commonwealth within the meaning of G. L. c. 181, §§ 3, 5, and 12, and is, therefore, barred from seeking relief in our courts.

The basic contention is that the defendant has engaged in unfair competition in violation of G. L. c. 93, §§ 14A–14D, the Fair Trade Law.  The case was referred to a master, who filed a report which was confirmed.  From a final decree of injunction the defendant appealed.

Massachusetts is one of the minority jurisdictions which hold the Fair Trade Law to be valid. *General Elec. Co. v. Kimball Jewelers, Inc.* 333 Mass. 665, 675–678.  *E. I. du Pont de Nemours & Co. Inc. v. Kaufman & Chernick, Inc.* 337 Mass. 216, 219.  *Colgate-Palmolive Co. v. Elm Farm Foods Co.* 337 Mass. 221, 225.  We are not asked to reconsider this holding, and we are not so disposed now to make a retroactive reinterpretation of legislative intent on a matter which is largely one of policy.  See *Remington Arms Co. Inc. v. Lechmere Tire & Sales Co.* 339 Mass. 131, 137.

1.  The bill prayed for an injunction as to "any commodities bearing, or the containers or labels of which bear, the plaintiff's trademarks, brands, or name at prices less than the minimum sale or resale price now or at any time hereafter" established by the plaintiff.  The final decree contained an injunction relating to "any commodities bearing,

---

[1] § 14A (as amended through St. 1939, c. 231).  "No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, or the vending equipment from which said commodity is sold to consumers bears, the trademark, brand or name of the producer or owner of such commodity and *which is in fair and open competition with commodities of the same general class produced by others* shall be deemed in violation of any law of the commonwealth by reason of any of the following provisions which may be contained in such contract:  (1) That the buyer will not resell such commodity except at the price stipulated by the vendor.  (2) That the producer or vendee of a commodity require upon the sale of such commodity to another, that such purchaser agree that he will not, in turn, resell except at the price stipulated by such producer or vendee. . . ."  (emphasis supplied).

or the containers or labels of which bear, the plaintiff's name 'Shulton' or any variation thereof, or bearing the trademark or brand of the plaintiff Shulton.''

The master made general findings, based on his subsidiary findings, that the plaintiff had ''established minimum fair trade prices on certain toilet articles manufactured and distributed by it which bore its trademark, brand, or name. These articles are in 'fair and open competition with commodities of the same general classes' produced by others.''

The subsidiary findings do not sustain these general findings. With respect to only one Shulton product, after shave lotion, were there adequately detailed findings about the name and extent of the plaintiff's competition. He found that the plaintiff's most expensive lotion retails for $3.50 for about six fluid ounces, and that its best selling lotion retails for $1.25 for four and three-fourths ounces. Several other lotions made by various producers retail at approximately the same price as the less expensive lotion. The only lotion which retails for about the same price as the more expensive lotion is sold by Jade East at $3 to $3.50 for four ounces.

Specific findings are lacking as to the competition faced by the plaintiff's other products. The master found that the plaintiff manufactures and sells after shave lotion, talcum powder, hair cream, toilet soaps, hair shampoos, deodorants, and other cosmetics and colognes; and the ''[p]roducts similar in nature'' are manufactured and distributed by ten other manufacturers listed by name. These other manufacturers sell and distribute their products throughout the Commonwealth, in many cases to the same stores as the plaintiff. '' [S]ome of these products of different manufacturers do compete with the plaintiff's products, and the plaintiff's products are in fair and open competition with commodities of the same general class produced by others.''

The findings, in and of themselves, do not support the final decree which covers all brand name products of the plaintiff. Annexed to the bill of complaint, as exhibit B, is

a copy of the price schedule for Shulton products containing the minimum sale or resale prices. This lists approximately 200 items.

The plaintiff, however, relies upon a notice to admit facts, so called, which it filed and which the defendant did not deny. G. L. c. 231, § 69 (as amended through St. 1946, c. 450). *Krinsky* v. *Pilgrim Trust Co.* 337 Mass. 401, 408. The purported facts thus filed and now brought to our attention are: "1. Plaintiff has for years manufactured, distributed and sold cosmetics, toilet articles, perfumery, powder and other commodities of a similar nature." "10. Exhibit B attached to the bill of complaint is a copy of plaintiff's minimum price schedule for . . . products of the plaintiff." These clearly are facts, and are facts whose accuracy is not open to doubt. Their present materiality is to give fuller meaning to another alleged fact: "4. Said commodities or products have been in competition with commodities or products of the same general class produced by others." It will be noted that the words "fair and open" in § 14A of the Fair Trade Law are not included.[1] This omission could raise a very different issue. The question for the master and for us on appeal must cover the full extent prescribed by § 14A. Whether competition is "fair and open" presents a question of law, which cannot be admitted under the guise of a question of fact as contemplated under c. 231, § 69.

There is a further difficulty. "Fair and open competition" means competition sufficiently vigorous "so that if the resale price of the branded article were set too high the manufacturer would lose his trade by the competition of other similar articles." *Eastman Kodak Co.* v. *Federal Trade Commn.* 158 F. 2d 592, 593–594 (2d Cir.), cert. den. 330 U. S. 828. *General Elec. Co.* v. *S. Klein-on-the-Square, Inc.* 121 N. Y. S. 2d 37. But in the case at bar the defendant might have felt unable to deny that "other products"

---

[1] In the McGuire Act, 15 U. S. C. § 45 (a) (2) (1964) the corresponding phrase is "free and open competition."

were in the broad sense "in competition" with the plaintiff's products. In these circumstances a dilemma confronting the defendant stands out. Had it admitted that the plaintiff's products were "in competition" with those of others, as it in effect did, this would, perhaps unsoundly, concede much of the case. Had the defendant filed a denial and "competition" should then be given a broad interpretation it would have run the risk of the sanction imposed by § 69 of having to pay "the reasonable expense of proving such fact." Facts which would fully support the master's finding as to the nature of the plaintiff's competition cannot be supplied by the notice to admit.

2. The master made the general finding that "the plaintiff's enforcement program and activities are adequate, diligent, consistent and made in good faith." The subsidiary findings are in support. These cover eight pages of the printed record on this point. The plaintiff's attorney in charge of enforcement, Mr. Durkin, had no knowledge of other violations that he was not "doing something about" at the time of the suit. Between 1960 and the time of the hearing, nine other enforcement suits were brought in the Commonwealth. Of forty violations in Massachusetts brought to the plaintiff's attention since 1963, five led to litigation and in the others voluntary compliance was obtained.

Following commencement of this suit in June, 1963, the defendant sent out a shopper to find violations of the plaintiff's fair trade prices. Between August, 1963, and April, 1965, 124 violations, mostly at supermarkets, were found, 110 of which consisted of giving trading stamps. Most of these were reported to the plaintiff's counsel, who sent out a shopper of his own to check. The shopper visited thirty-two stores and found six violations. Warning letters were sent to four, and suit brought against two.

Although some supermarkets have consistently sold below the fair trade price by issuing trading stamps on Shulton products (see *Colgate-Palmolive Co.* v. *Elm Farm Foods Co.* 337 Mass. 221, 228–230) the facts found by the

master, which we need not repeat, indicate that the plaintiff's enforcement was "not unreasonable or dilatory, or such as to lead anyone to believe that the plaintiff had waived or abandoned its right to enforce the minimum retail resale prices." *General Elec. Co. v. Kimball Jewelers, Inc.* 333 Mass. 665, 674–675. See cases there collected. See also *Eastman Kodak Co. v. Howe Util. Co.* 138 F. Supp. 670, 672–674 (D. Md.).

3. General findings of the master are that the plaintiff is a foreign corporation engaged solely in interstate commerce; that all its activities in the Commonwealth are matters incidental to, or reasonably necessary to its conduct of interstate commerce; and that the qualification requirements of G. L. c. 181 are inapplicable. These are supported by subsidiary findings, and fall well within our decision in *Remington Arms Co. Inc. v. Lechmere Tire & Sales Co.* 339 Mass. 131.

The plaintiff manufactures its products in Clifton, New Jersey, and Memphis, Tennessee. Shipments to the Commonwealth are made from New Jersey, where the nearest warehouse is. Fair trade contracts executed by Massachusetts retailers are on forms prepared by the home office in New Jersey. At least six fair trade contracts were "entered into physically" here. There are six salesmen who cover some portion of the Commonwealth. Two of them live here. They are all full time employees, and use automobiles leased and paid for by the plaintiff and registered in the lessor's name. The two automobiles of salesmen residing here have Massachusetts registration. The plaintiff is trying to obtain more business through retail outlets, and is not looking for wholesale accounts. Supervisory employees occasionally come here. There are between 350 and 400 wholesale and retail customers of the plaintiff in Massachusetts.

The salesmen's salary checks come from New Jersey. They solicit orders from customers, and fill out credit information, which is sent with the orders to the credit department in New Jersey. That department, if it approves

credit, stamps approval on an order and sends it to the shipping department. There is no sale until such approval. The goods are shipped to this Commonwealth by common carrier. The carrier does not bear the name of Shulton. All payments by customers are sent to New Jersey.

One female employee, who lives in Massachusetts, demonstrates to clerks in retail stores a Shulton line of hair products called "Technique." Eight to twelve times a year she holds school classes in a restaurant. There are about fifty in a class. The purpose is to get clerks to know the products and to increase the sales.

Advertising decisions are made in New Jersey. Advertising is handled by a New York agency, except that when a promotion is set up with a major store, one of the salesmen works with the store setting up an advertisement, which is partially paid by the plaintiff and partially by the store. The plaintiff has no office, no telephone listing, no bank account, and owns no property, in Massachusetts. Authorization for hiring an attorney here comes from New Jersey. The plaintiff sells through distributors and directly to retailers. Sales to distributors are for their own account, and they own the merchandise.

On the authority of the *Remington Arms* case, where the activities of the foreign corporation were very similar to those just described, the plaintiff is not barred from resort to the courts by G. L. c. 181, § 5.

4. The final decree is reversed, and the case is remanded to the Superior Court. There it shall be determined whether there are to be further hearings by a judge or by a master as to other commodities. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224–225. If it should not be so determined within sixty days after rescript, the final decree is to be modified by restricting its scope to after shave lotion, and as so modified, it is to be affirmed.

*So ordered.*