Lentheric, Inc., *v.* F. W. Woolworth Co., Appellant.

524

Argued April 18, 1940.   Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Harold B. Beitler,* of *Beitler, Burns & Rosenberger*
and *Davies, Auerbach, Cornell & Hardy,* for appellant.

*Richardson Dilworth,* with him *Harold E. Kohn, Mur-
doch, Paxson, Kalish & Green* and *Cravath, de Gersdorff,
Swaine & Wood,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 6, 1940:

Plaintiff brought a bill in equity to restrain the al-
leged violation of the Pennsylvania Fair Trade Act of
June 5, 1935, P. L. 266. Section 2 of this Act condemns
as actionable unfair competition, the "wilfully and
knowingly advertising, offering for sale, or selling any
commodity at less than the price stipulated in any con-
tract entered into pursuant to the provisions of section
one of this act."

Both plaintiff and defendant are New York corpora-
tions duly registered to do business in Pennsylvania.
Part of plaintiff's business is the distribution and sale
in this State of various perfumery products prepared or
manufactured by it under its name, brands, trade-marks
and trade names. Defendant's business is the mainte-

nance and operation of retail stores known as five and ten cent stores, throughout the United States. In Philadelphia it operates 38 stores, among them being certain stores where the acts complained of took place.

Plaintiff's products include liquid perfume known as bouquets, sold under its name, brands, trade-marks and trade names, to wit: "Bouquet Lentheric au parfum Tweed," "Bouquet Lentheric au parfum Miracle," and "Bouquet Lentheric au parfum Shanghai." These products are sold directly to retail dealers in Philadelphia and are resold by such dealers to the public. The trade names referred to have all been duly registered in the United States Patent Office and with the United States Treasury Department. The record shows that plaintiff has spent during the four years preceding the filing of its bill, the sum of $1,074,842 in advertising its products under these trade names.

Under the provisions of the Fair Trade Act of 1935, supra, plaintiff has entered into written contracts with retail dealers in Philadelphia to whom it sells its products, whereby the dealers have agreed that the resale of plaintiff's products shall be in accordance with the act, and that they will not advertise, offer for sale or sell plaintiff's products in Pennsylvania at prices lower than the minimum retail prices published from time to time by plaintiff. Plaintiff's minimum price schedule in effect in Pennsylvania in 1938 and up to the time of filing the bill, provides a minimum price of 50 cents for one ounce or any quantity less than one ounce of its bouquets sold at retail.

On April 28, 1938, plaintiff informed defendant that plaintiff had entered into fair trade contracts with retailers selling plaintiff's products in Philadelphia and that, in accordance with such contracts, it had published and furnished to its retailers a written schedule of minimum prices at which its products may be sold at retail. With this letter it furnished a copy of its published minimum price schedule for Pennsylvania, together with

notice that any advertisement, offer for sale, or sale of plaintiff's products at prices less than those stipulated for the quantities stated, would subject defendant to liability under the Fair Trade Act. On June 16, 1938, plaintiff was informed by defendant that the latter had completed its investigation and had concluded that its sale of plaintiff's products was not in violation of the Fair Trade Act. The sale thus referred to was the sale in some of its Philadelphia stores of the bouquets above mentioned, rebottled in containers of these sizes, respectively, 2.4 and 3.5 centimeters. These were sold at 10 cents per container. At this price, the total amount received by defendant for the number of containers necessary to equal one ounce of plaintiff's bouquets exceeds 50 cents. The products of plaintiff thus sold at 10 cents per container were all rebottled by the M. M. Greene Toiletries, New York City, and were all sold under plaintiff's name, brands, trade-marks and trade names, each container bearing the following caption: "BOUQUET LENTHERIC AU PARFUM TWEED [or MIRACLE, or SHANGHAI] REBOTTLED BY M. M. GREENE TOILETRIES, N. Y., WHOLLY INDEPENDENT OF LENTHERIC." The Greene Toiletries purchased plaintiff's products for purposes of rebottling from retail dealers and not from plaintiff.

The sale of these containers in certain of defendant's stores was duly established and it was also established that the sale of plaintiff's products in this manner has caused nearly all of plaintiff's 61 retail outlets in Philadelphia to complain to plaintiff concerning this practice, both on the ground that it cheapened the product by having it sold in any quantity for 10 cents, and that it interfered with the promised opportunity to develop a clientele for plaintiff's products. Certain owners of retail outlets for plaintiff's products in Philadelphia, informed plaintiff that unless the sale of these bouquets by defendant in quantities less than one ounce at 10 cents per container, ceased, they would be forced either

to discontinue the purchase of plaintiff's products or to add similar products in competition therewith.

The court below granted the injunction asked for and this appeal followed.

In his adjudication the Chancellor aptly pointed out that "even under the present law [i. e., the Fair Trade Act, supra], defendant is not, and may not be, prevented from selling plaintiff's products in rebottled form, [if] appropriately labeled. The only requirement imposed by the act is that, if such products are sold under plaintiff's brand or trade-mark, the price must not be less than that stipulated by plaintiff in pursuance of its contracts with other dealers. Furthermore, there is no absolute price restriction on the resale of plaintiff's product as such, but only on its resale under plaintiff's brand or trade-mark." See *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 299 U. S. 183. The court also correctly said: "It need hardly be stated that it is immaterial that the total price received by defendant in its sales of plaintiff's bouquets in small containers exceeds 50 cents per ounce. The 'price stipulated by the vendor,' plaintiff, was not 50 cents per ounce, but 50 cents for one ounce or any quantity less than one ounce. This price has concededly not been adhered to by defendant."

The purpose of the Fair Trade Act is clearly stated to be: "To protect trade-mark owners, distributors, and the public against injuries and uneconomic practices in the distribution of articles of standard quality under a distinguished trade-mark, brand or name." Section 1 permits the producer or owner of "a commodity which bears, or the label or content of which bears, the trade-mark, brand or the name of the producer or owner . . . which is in fair and open competition with commodities of the same general class produced by others," to enter into a contract: "(a) That the buyer will not resell such commodity, except at the price stipulated by the vendor. (b) That the vendee or producer require in

delivery to whom he may resell such commodity to agree that he will not in turn resell except at the price stipulated by such vendor or such vendee."

The issue in this case turns on the interpretation of the two words "price stipulated" as used in the section quoted. Appellant contends that since its sale of plaintiff's products in quantities less than one ounce, is not at a price less than 50 cents an ounce *when these smaller quantities and the dimes obtained for them are added together,* it is not violating the Fair Trade Act by selling these small quantities at 10 cents. The fallacy in this reasoning arises from the failure to consider the fact that in determining what is "price stipulated" regard must be had to the "price" prescribed in reference to the "quantity" contractually "tied" to that price. In the case before us, plaintiff in its contract with its "outlet" dealers stipulated that the price of its perfume bouquets must be 50 cents for one ounce or *for any fraction of an ounce.* It had the undoubted right to stipulate, if it had chosen to do so, that 2.4 centimeters of its perfume bouquets could not be sold at retail for less than 50 cents, and if it had done so, the defendant, in selling such a quantity at 10 cents, would clearly be violating the Fair Trade Act. Plaintiff had the undoubted right to stipulate in its minimum retail price schedule, that 1 per cent or 2 per cent or any other per cent of an ounce of its perfume bouquets could not be sold at retail for less than 50 cents. Plaintiff in stipulating that its perfume bouquets could not be sold at retail "in quantities of one ounce or a fraction of an ounce, for less than 50 cents" was acting within its undoubted legal rights, and when defendant sold any fraction of an ounce for less than 50 cents, it was violating the Fair Trade Act. When plaintiff decided that it did not want its trade-marked perfume bouquets sold at less than 50 cents for an ounce or for a fraction of an ounce, its decision was presumably based on its conception of good business policy; with the wisdom of that decision

the law has no concern. If, for example, a producer and distributor of olives should decide that his trade-marked olives should be sold only for 1 dollar a bottle containing one quart or any less quantity of olives, that "stipulated price" (provided the producer had brought his product within the provisions of the Fair Trade Act), would have to be respected, and if any dealer sold or offered for sale these trade-marked olives for 2 cents each (or for any other sum less than one dollar), he would be a proper subject for injunction at the instance of the damaged producer.

There is nothing in our Fair Trade Act about proportioning prices to quantity. In the instant case, plaintiff's "stipulated price" for four ounces of its perfume bouquets is $1.00. If defendant's interpretation of the Fair Trade Act is sound, the latter could legally sell 2 ounces of plaintiff's perfume at 50 cents, thus underselling the outlet dealer who charges 50 cents for one ounce but does sell four ounces for $1.00. Under defendant's interpretation of the law, it could in that situation successfully defend a suit for an injunction by applying the arithmetical formula that four ounces for $1.00 is equivalent to two ounces for 50 cents.* If this interpretation should be judicially accepted, no producer of a trade-marked product would have any control over the sale price of that product except its sale in one certain quantity at one certain price, to which price all

---

* Defendant in selling plaintiff's products in small quantities does in fact charge considerably in excess of 50 cents an ounce. 10 cent "Nips" containing the plaintiff's extracts each held only 1/70th of a dram, and to acquire a dram of the extract by purchasing defendant's containers requires an expenditure of $7.00, as against plaintiff's minimum price of $1.00 for a dram of extract. The 10 cent containers of bouquets which defendant sold each held less than one-fifth of an ounce, and consequently to acquire an ounce of "Bouquet Lentheric" by such purchases required an expenditure of almost $1.00 as against the plaintiff's minimum price of 50 cents for an ounce. All this, however, is immaterial to the issue now before us.

sales of its product in other quantities would be obliged to conform mathematically. If, for example, it decided that its product should be sold only in quantities of one gallon and it stipulated that it could be sold only for $10.00 per gallon or any fractional part thereof, any person who secures possession of that product could, if defendant's interpretation of the Fair Trade Act is accepted, sell it for $2.00 a pint (or at any other figure in excess of $1.25 a pint). Such competition might injure the good will of the dealer's business and nullify the purpose of the Fair Trade Act and yet the law would be powerless to extend protection to the damaged dealer.

We decide that when the producer of a trade-marked commodity stipulates in a contract relative to the sale or resale of that commodity a certain price, he has the right to link price with quantity and that linking must be respected by all who resell that product unless such reselling comes within the exceptions (a), (b) and (c) in the concluding lines of section 1 of the Fair Trade Act.

Appellant contends that plaintiff's action is an attempt to prevent the rebottling of its products and that rebottling is not unlawful and that for the court below to have granted the injunction appealed from is to write into the Fair Trade Act something which the legislature omitted. The answer to that argument is that the plaintiff does not object to any owner of its products rebottling them and selling them on the product's own intrinsic merit in any quantities it may choose. But plaintiff does assert its right to fix the minimum price at which its products must be sold in the quantities it designates *when those products bear the plaintiff's trademark or trade-name.* Its purpose in so doing is to protect its good will which it has built up at great expense. A part of that good will is the product's appeal to those customers who can afford to purchase perfumes in certain quantities at a certain price.

California has a Fair Trade Act whose provisions are much like the provisions of the Pennsylvania act. In a case arising under the California act, indexed as *Lentheric, Inc., v. F. W. Woolworth Co.*, No. 449,062, in the Superior Court of California, Judge Wilson, in decreeing an injunction against defendant, well said: "The Fair Trade Act deals solely with price, not with rebottling or compounding, and the use of a trade-mark, brand, or name is inhibited only when a dealer attempts to sell a commodity for less than the price fixed by the producer. The fixing of the same price for a fraction of an ounce as that fixed for a full ounce does not transmute the minimum price restrictions permitted by the Fair Trade Act into minimum quantity restrictions. As long as the plaintiff's product is 'in fair and open competition with commodities of the same general class produced by others' the plaintiff may establish any price that it deems proper for its commodity. . . . The purpose of the Fair Trade Act is not to stimulate sales but, aside from protecting the public, its primary purpose is to protect the manufacturer's good will which is represented by its trade-mark, brand, and name. . . . A producer, in order to have the benefits of the Fair Trade Act, is not required to adjust either his price or his quantity program to the plans and methods of other producers." In *Lentheric, Inc., v. W. T. Grant Co.*, No. 7351 of the Appellate Division of the Supreme Court of New York, Judge Glennon, speaking for that court, aptly said: "Retail distributors in the State of New York have complained to Lentheric that Grant's practice of selling fractions of an ounce of rebottled 'Bouquet Lentheric' at 10 cents, much less than the minimum price specified by Lentheric, is injuring their business, and that the practice tends to lessen the reputation of Lentheric products as merchandise of high quality and exclusive character. . . . The plaintiff in this controversy does not complain of the resale by the defendant

of its perfumery products at the price of 10 cents per vial, or at any other price which defendant sees fit to fix. It does object, and properly so, to the use of its name in connection with the vial which defendant has used to sell the product at a price which is less than that stipulated in its contracts. . . . Under the circumstances we are of the view that plaintiff is entitled to the relief it seeks."

This record supports the view that defendant is attempting to capitalize on plaintiff's trade-marks and good will by selling plaintiff's perfume to a clientele which presumably does not buy perfumes in the quantities in which plaintiff prefers to have its products marketed. Plaintiff apparently takes the view that if its perfume is widely used in the market to which defendant caters, it will lose its prestige in that market to which plaintiff addresses its sales appeal. Plaintiff says, in effect, to defendant and to others: "You shall not sell my perfumes in containers bearing my trade-marks, brand or name, which product is in fair and open competition with commodities of the same general class produced by others, for less than 50 cents for an ounce or for any fractional part of an ounce." Defendant replies: "We will sell your perfume in containers bearing your trade-mark, brand or name and holding a small fractional part of an ounce for 10 cents a container." Plaintiff, showing that it has been damaged by defendant's actions in so selling its perfumes below the "stipulated price" per ounce or fraction thereof, invokes the Fair Trade Act of this Commonwealth and asks a court of equity to vindicate against defendant the rights plaintiff claims that Act gives it. The court below decided that plaintiff was entitled to the relief it sought. With the court's findings of fact and conclusions of law we agree.

The decree is affirmed at appellant's cost.