THE LIONEL CORPORATION, A CORPORATION OF THE STATE OF NEW YORK, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. GRAYSON-ROBINSON STORES, INC., A CORPORATION OF THE STATE OF CALIFORNIA, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND GRAYSON-ROBINSON STORES, INC., A CORPORATION OF THE STATE OF CALIFORNIA, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, TRADING AS S. KLEIN ON THE SQUARE, DEFENDANT-RESPONDENT.

Argued February 8, 1954—Decided April 5, 1954.

*Mr. Samuel Voltaggio* argued the cause for the appellant.

*Mr. Sidney A. Diamond,* of the New York Bar, argued the cause for the respondent (*Mr. Meyer E. Ruback,* and *Messrs. Roosevelt, Freidin & Littauer,* of the New York Bar, of counsel; *Messrs. Ruback, Albach & Weisman,* attorneys).

The opinion of the court was delivered by

BURLING, J.   This appeal stems from a civil action instituted for the purpose of obtaining injunctive and compensatory relief under the "nonsigner" clause of the New Jersey Fair Trade Act, *R. S.* 56:4–3 *et seq.*   The complaint was filed by The Lionel Corporation, a corporation of the State of New York authorized to do business in New Jersey (hereinafter referred to as Lionel), in the Superior Court, Chancery Division.   The complaint named as defendant Grayson-Robinson Stores, Inc., a corporation of the State of California authorized to do business in the State of New Jersey, and Grayson-Robinson Stores, Inc., a corporation of the State of California, authorized to do business in the State of New Jersey, trading as S. Klein on the Square (hereinafter referred to as the defendant).   The Superior Court, Chancery Division, entered summary judgment for the defendant.

*Lionel Corp. v. Grayson-Robinson Stores*, 27 *N. J. Super.* 54 (*Ch. Div.* 1953). Lionel's appeal to the Superior Court, Appellate Division, was certified by us prior to hearing there.

Lionel manufactures and produces "toy" electric trains, parts, accessories and model railroad equipment under the brand and trade names of "Lionel" and "Lionel Trains." It exercises price regulation by means of resale price maintenance agreements, commonly termed "fair trade contracts," and has entered into agreements of that character with retailers in business in this State.

The defendant operates a nationwide chain of retail stores, including one in the City of Newark, New Jersey. The defendant, although no answer has been filed, admits that it did offer for sale, and sold, Lionel's branded and trademarked products at less than the prices stipulated in Lionel's resale price maintenance agreements, and insists upon its present right to do so. Lionel contends that the defendant has sold Lionel's "fair trade" protected products at prices as much as 25% to 30% less than Lionel's resale contract prices. This is supported by affidavits and is not controverted.

Lionel's complaint, hereinabove mentioned, asserting these matters of fact and seeking injunctive relief and compensatory damages in reliance thereon, was filed and service was effected upon the defendant. The latter thereupon moved for summary judgment (without having filed an answer to the complaint, see *R. R.* 4:58–2, formerly *Rule* 3:56–2). The defendant's motion for summary judgment asserted (a) there was no genuine issue as to any material fact challenged and the defendant was entitled to summary judgment as a matter of law, and (b) Lionel's complaint failed to state a claim upon which relief could be granted.

The Superior Court, Chancery Division, granted the defendant's motion and entered summary judgment in favor of the defendant. The opinion filed by the court expressed its findings of fact and conclusions of law. The court concluded that the complaint and affidavits filed showed palpably that there was no genuine issue as to any material fact.

Further, the trial court found that the New Jersey Fair Trade Act, *R. S.* 56:4–3 *et seq., supra,* had been held to be constitutional by New Jersey courts of last resort in reliance upon the United States Supreme Court decision in *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.,* 299 *U. S.* 183, 57 *S. Ct.* 139, 81 *L. Ed.* 109, 106 *A. L. R.* 1476 (1936), and that the *Old Dearborn* case, *supra,* had not been overruled by *Schwegmann Bros. v. Calvert Distillers Corporation,* 341 *U. S.* 384, 71 *S. Ct.* 745, 95 *L. Ed.* 1035, 19 *A. L. R. 2d* 1119 (1951). However, the Superior Court, Chancery Division, determined that price adherence may be secured only by virtue of voluntary agreement and therefore compulsory adherence to resale prices stipulated by the manufacturer or producer, *i. e.,* the adherence to such prices required on the part of a retailer who has not voluntarily become a party to the resale price maintenance agreements, such requirement attaching under the "nonsigner" provision of the New Jersey Fair Trade Act, *R. S.* 56:4–6, is unconstitutional.

On this appeal several questions are involved. These are grouped into four categories. Principal among these is the general question whether the "nonsigner" portion of the New Jersey Fair Trade Act, *R. S.* 56:4–6, *supra,* is constitutional. Secondarily, the questions involved include the constitutionality and application of the McGuire Act, *P. L.* 542, 82nd *Congress, 2nd Session,* c. 745 (July 14, 1952). Finally, the applicability of the phrase "price stipulated" as set forth in *R. S.* 56:4–5 and *R. S.* 56:4–6 under the circumstances of this case and the applicability of factual defenses (alleged lack of notice of Lionel's resale price maintenance agreements, alleged unlawful combination, *i. e.,* "horizontal" price fixing) are included among the questions involved.

I. CONSTITUTIONALITY OF THE NEW JERSEY FAIR TRADE
ACT, *R. S.* 56:4–3 *et seq.*

The Fair Trade Act is asserted by the defendant to violate the State and Federal Constitutions upon three grounds.

The first two of these are: (a) that the Fair Trade Act constitutes a deprivation of property of the defendant without due process of law or a denial of equal protection of the law, in contravention of the *14th Amendment to the United States Constitution*, and also of *N. J. Const.* 1947, *Art.* I, *pars.* 1, 5, and (b) that the Fair Trade Act constitutes an unlawful delegation of legislative power, see *N. J. Const.* 1947, *Art.* IV, *Sec.* I, *par.* 1, and in this respect also violative of the due process clause of the *14th Amendment, supra.* The third ground of constitutional attack, that the act creates an unlawful burden upon interstate commerce and therefore violates *Art.* I, *sec.* 8, of the *United States Constitution*, will be adverted to in our conclusion, *post*, concerning the McGuire Act.

This appeal is the first occasion on which an appeal to this court has expressly raised the question of constitutionality of the Fair Trade Act in relation to due process of law, equal protection of the law and delegation of legislative power, although we have heretofore observed in the course of detailing the historical development of "fair trade" that the former Court of Errors and Appeals in *Johnson & Johnson v. Weissbard*, 121 *N. J. Eq.* 585, 587 (*E. & A.* 1937), expressly followed the *Old Dearborn* case, *supra*, in this respect. See *General Electric Co. v. Packard Bamberger & Co.*, 14 *N. J.* 209, 215 (1953); *Johnson & Johnson v. Charmley Drug Co.*, 11 *N. J.* 526, 536 (1953).

We find no basis pertinent to the resolution of the constitutional questions involved upon which to differentiate the Illinois statute considered in the *Old Dearborn* case, *supra*, from the New Jersey Fair Trade Act. To overrule the decision of the former Court of Errors and Appeals in *Johnson & Johnson v. Weissbard, supra*, would require a declaration that we are no longer bound by the *Old Dearborn* case, *supra*. It is our conclusion that the *Old Dearborn* case, *supra*, has not been overruled by the United States Supreme Court and is dispositive here.

Under the circumstances of this case the application of the New Jersey constitutional provisions is governed by

the construction and application accorded the 14th Amendment. As we have heretofore stated, these questions were directly considered and disposed of with a declaration of constitutionality in the *Old Dearborn* case, *supra,* and we are bound by that decision of the United States Supreme Court until it is overruled by the United States Supreme Court. In *Pennekamp v. State of Florida,* 328 *U. S.* 331, 335, 66 *S. Ct.* 1029, 1031, 90 *L. Ed.* 1295, 1297 (1945), the United States Supreme Court expressly declared:

> "The Constitution has imposed upon this Court final authority to determine the meaning and application of those words of that instrument which require interpretation to resolve judicial issues. * * *"

■ The decision of the United States Supreme Court in *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 *U. S.* 384, 71 *S. Ct.* 745, 95 *L. Ed.* 1035 (1951) did not reach the issue of constitutionality of the "nonsigner" clause of the fair trade acts under the *14th Amendment,* but was concerned only with interpretation of the federal anti-trust laws and the application of the "nonsigner" clauses of state fair trade acts to interstate commerce. Contrary to the argument asserted by the defendant, we cannot *assume* that the United States Supreme Court would overrule the *Old Dearborn* case, *supra,* if the opportunity to do so should be presented to that tribunal. Such an assumption, even if it were open to us, would be unrealistic in view of the United States Supreme Court's denial of *certiorari* in *Schwegmann Bros. Giant Super Market v. Eli Lilly & Co.,* 205 *F. 2d* 788 (*C. C. A.* 5 1953), *certiorari* denied 346 *U. S.* 856, 74 *S. Ct.* 71, 98 *L. Ed.* ——, rehearing denied 346 *U. S.* 905, 74 *S. Ct.* 217, 98 *L. Ed.* —— (1953).

## II. INTERSTATE COMMERCE AND THE McGUIRE ACT

The defendant in the proceedings in the Superior Court, Chancery Division, and on the appeal to this court has contended that the McGuire Act, *P. L.* 542, 82*nd Congress, 2nd*

*Session, c.* 745 (*July* 14, 1952), constitutes an unconstitutional delegation by Congress of the power to fix prices and an unconstitutional delegation by Congress of its power to regulate interstate commerce. *United States Constitution, Art.* I, *sec.* 8.

In *General Electric Company v. Packard Bamberger & Co., Inc., supra,* we recently held that the McGuire Act was effective to permit application of the New Jersey Fair Trade Act to interstate commerce. The conclusions expressed in our opinion in the *General Electric Company* case, *supra,* are pertinent here although constitutionality of the McGuire Act was not directly resolved therein. Succinctly, we determine that the McGuire Act is not a delegation of power either to fix prices or to regulate interstate commerce, but is a declaration of consent by Congress that the "nonsigner" provisions of otherwise valid state "fair trade" statutes shall operate on commodities traveling in interstate commerce. The keystone of our decision in the *General Electric Company* case, *supra,* was *In re Rahrer* (*Wilkerson v. Rahrer*) 140 *U. S.* 545, 11 *S. Ct.* 865, 35 *L. Ed.* 572, 575 (1891). That case and the other authorities discussed in our decision in the *General Electric Company* case, *supra,* control our decision here. *Pennekamp v. State of Florida, supra.*

The defendant also asserts that the New Jersey Fair Trade Act constitutes an unlawful burden on interstate commerce. Under the decisions above adverted to this argument is without merit.

### III. The "Price Stipulated"

The provisions of the New Jersey Fair Trade Act purport to validate contracts in which the buyer agrees not to resell the seller's branded or trade marked property "except at the price stipulated by the vendor." *R. S.* 56:4–5, *supra.* The "nonsigner" clause provides that sale, *etc.,* of such property "at less than the price stipulated" in such a contract entered into under *R. S.* 56:4–5, *supra,* is unfair competition. *R. S.* 56:4–6, *supra.*

■■ The defendant contends that Lionel's "fair trade" contracts failed to comply with the statute because they contained minimum rather than absolute or stipulated prices. The facts are undisputed. This is a question of law and was determined in the plaintiff's favor by the trial court. In this respect the complaint and affidavits palpably show no genuine issue of a material fact. The contract language is unambiguous and clearly states a stipulated price. The defendant's contention in this respect is without merit and it devolves upon the court to declare the judgment which the law imposes.

### IV. OTHER DEFENSES

■■ The defendant also asserted that the "nonsigner" clause of the New Jersey Fair Trade Act (*R. S.* 56:4–6, *supra*) does not apply to commodities acquired prior to the acquisition of knowledge of the plaintiff's New Jersey resale price maintenance agreements and the prices stipulated therein. The construction asserted by the defendant appears to be required by the clear language of the statute. However, as applied to the present case this question is moot as to future matters, since defendant's affidavit shows that it now has knowledge and it was stipulated at the trial level that defendant has none of Lionel's articles in stock. The question is also moot in this case as to past sales by the defendant because there is palpably no genuine issue as to the fact that all New Jersey sales made by it were effected prior to knowledge of Lionel's *New Jersey* resale price maintenance agreements. *R. S.* 56:4–6, *supra,* requires that underselling, to be actionable, be effected "willfully and knowingly" with respect to prices "stipulated in any contract entered into pursuant to the provisions of section 56:4–5." The complaint and affidavits on file demonstrate that prior to December 17, 1952 the defendant had no knowledge of Lionel's New Jersey "fair trade" contracts, and that no violations of *R. S.* 56:4–6, *supra,* occurred thereafter.

The defendant also asserts that Lionel's New Jersey "fair trade" contracts are void because they are part of Lionel's

nationwide price-fixing policies (adverted to in the complaint). It is argued by the defendant that inasmuch as resale price maintenance is not sanctioned in some of the states, Lionel's policy is in restraint of trade and unlawful.

As a matter of law this defense is devoid of merit as we are bound by the *Old Dearborn* case, *supra*, in this respect. The complaint and affidavits on file show palpably that there is no genuine issue as to any material fact concerning this alleged defense. The defendant's premise is legally unsound if the New Jersey Fair Trade Act is valid. That statute, and the McGuire Act, contemplate just such a situation. "Vertical" price maintenance is accorded protection here and the mere fact that other states prohibit resale price maintenance of this category does not invalidate the New Jersey "fair trade" agreement under the constitutional philosophy of the *Old Dearborn* case, *supra*. However, strictly "horizontal" price maintenance, namely contract between manufacturers or between wholesalers, or between retailers, which is not involved in the asserted defense, continues to be illegal in this State. *Pazen v. Silver Rod Stores, Inc.,* 130 *N. J. Eq.* 407, 411–413 (*E. & A.* 1941). *Cf. General Electric Company v. Packard Bamberger & Co., Inc., supra.*

## Conclusion

For the reasons expressed in this opinion the judgment of the Superior Court, Chancery Division, will be reversed insofar as it denied injunctive relief to Lionel, and such relief will be ordered granted to Lionel, *cf. Sheild v. Welch,* 4 *N. J.* 563, 566–567 (1950), but the judgment will be affirmed insofar as it denied Lionel's claim for recovery of damages for past sales. The cause will be remanded to the Superior Court, Chancery Division, for entry of an amended final judgment consistent with this opinion.

Inasmuch as neither party to this appeal completely prevails no costs will be allowed to either party.

HEHER, J. (concurring). The holding of *Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109* (1936), was that the "non-signer" provision of the typical fair trade law, as a trade technique essential to the protection of the manufacturer's or producer's property interest in his trade-mark, brand or like identifying device, did not work a denial of due process of law or the equal protection of the laws or constitute an unlawful delegation of the legislative function. But the inquiry here is whether the state law comports with the security given by our own Constitution to the general principle of freedom of trade.

There is now reason to believe that the fair trade principle is used by distributors as a device to stifle price competition, in the name of protection to the producer's property right in his trade-mark, *Eli Lilly & Co. v. Schwegmann Bros. Giant Super Markets, 109 F. Supp.* 269 (*D. C. E. D. La.* 1953), ostensibly to serve the producer's interest, but in reality for their own gain; and such is perforce an arbitrary and unreasonable regulation of the non-signer's business and a delegation of the legislative power in violation of our own Constitution.

The record does not show that such is the case here or that the state law is in practice but a regulatory mechanism in restraint of price competition and thus obnoxious to our own constitutional limitations, rather than a means of serving the professed legislative policy of protection for the producer's property in his trade-mark.

Perhaps the time has come for a legislative reassessment of the policy in the context of prevailing trade practices and concepts and the teachings of experience. There is not sufficient ground in the presentation here for denying the relief sought by plaintiff.

I concur in the result.

*For modification*—Chief Justice VANDERBILT and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*Opposed*—None.