(No. 34902.—

KINSEY DISTILLING SALES COMPANY, Appellee, *vs.* FOREMOST LIQUOR STORES, INC., *et al.*, Appellants.

*Opinion filed November 26, 1958.*

SCHULTZ, BIRO & KARMEL, of Chicago, for appellants.

LEE A. FREEMAN, and DAVID J. KRUPP, both of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff, Kinsey Distilling Sales Company, brought an action in the circuit court of Cook County to permanently enjoin Foremost Liquor Stores, Inc., its president, and others from wilfully and knowingly advertising, offering for sale or selling three named brands of whisky at less than the prices stipulated from time to time under, and conformably to, the Fair Trade Act, and in accordance with contracts executed under it, and to recover damages of $150,000. All but one defendant joined in a motion to dismiss, the motion was denied, defendants elected to abide by their motion, and a decree was entered granting the injunctive relief sought. Defendants prosecute this direct appeal, constitutional questions being involved, within the contemplation of section 75 of the Civil Practice Act. Ill. Rev. Stat. 1957, chap. 110, par. 75.

Plaintiff, the sole sales and distributing agent in Illinois of three brands of whisky produced by Continental Distilling Corporation, sells to various wholesale distributors. The trademarks, brands or names are: Old Hickory Straight Bourbon Whisky, 100 proof Bottled-in-Bond for Old Hickory Distilling Corporation; Old Hickory Straight Bourbon Whisky, 86 proof bottled by Old Hickory Distillers Company; Kinsey Silver Blended Whisky, 70% GNS, 86 proof, bottled by Kinsey Distillers Company. Each of the three beverages, the complaint alleged, is in free, fair and open competition with like commodities, produced by others, and sold and distributed throughout Illinois. Plaintiff has expended substantial sums of money in advertising and promoting these products; their trademarks, brands or names have become widely and favorably known to the trade and public

generally in Illinois, thereby enabling plaintiff to sell large quantities of the products in Chicago and throughout the State. Plaintiff has executed fair trade contracts with a number of retailers in Illinois and its products, distributed in the State, are sold subject to the terms of the contracts. These contracts provide that the products shall not be sold, advertised or offered for sale in Illinois below the prices stipulated by plaintiff in written schedules.

Illustrative is a contract between plaintiff and an individual retailer which provides: (1) that the retailer shall not sell any of plaintiff's products to consumers in Illinois at other than the resale price therefor; (2) that it shall have the right to revise or change any such resale prices, the resale prices to be in accordance with written schedules furnished from time to time to the retailer by plaintiff; that plaintiff may list additional goods and brands in any such schedules, with designated retail prices to consumers, and that the provisions of the agreements shall apply to the additions; (3) that plaintiff shall not give any article of value or make any concession, rebate or refund which may change the retail prices designed by it; (4) that, in the event of the sale of the retailer's business, he shall require, as a condition of the sale, that the successor transferee be bound by the provisions of the agreement upon the retailer's part to be performed; (5) that plaintiff shall be entitled to injunctive relief against both actual or threatened breaches of the agreement by the retailer; (6) that the retailer agrees to pay plaintiff as liquidated damages $50 for each sale within Illinois at other than the resale prices to consumers then in effect under the contract.

All defendants, excepting two corporations which advertise and promote the sales of the other defendants and the president of the two companies, are engaged in selling alcoholic beverages at retail in the Chicago area. Plaintiff's complaint alleged that, prior to the acts complained of, it caused to be announced and made known generally to the

trade in Illinois the stipulated retail prices of the three products previously described and that defendants, on November 19, 1957, received copies of the schedules of the stipulated prices; that, nevertheless, they wilfully and knowingly offered for sale and advertised the products at less than those stipulated. Plaintiff alleged, further, that on January 8, 1958, Irving Garmisa entered into a fair trade agreement with it, providing for the maintenance of stipulated minimum fair trade prices for its products; that, subsequent to the execution of this contract, various named defendants induced Garmisa to breach his fair trade agreement with plaintiff.

Defendants' motion to dismiss was based upon the grounds, among others, that the Fair Trade Act is unconstitutional. Their principal attack upon appeal, as in the trial court, is directed against section 2, commonly referred to as the "non-signer" provision. (Ill. Rev. Stat. 1957, chap. 121½, par. 189.) Defendants contend that section 2 violates the due process clause of our constitution and, also, constitutes an unlawful delegation of legislative powers to private persons to fix prices in contravention of section 1 of article IV. Section 2 of the Fair Trade Act declares: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract, entered into pursuant to the provisions of section 1 of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

The constitutional validity of the Fair Trade Act was sustained in 1936 in *Joseph Triner Corp.* v. *McNeil,* 363 Ill. 559, and *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* 363 Ill. 610. Upon appeal, the United States Supreme Court held that the Illinois statute did not violate Federal constitutional guaranties. (*Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* 299 U.S. 183, 81 L. ed.

109.) Although we pointed out in the *Triner case* that this court was not concerned with the economic wisdom of the statute, defendants' assault upon the constitutionality of section 2 rests largely upon its asserted economic undesirability. The need for fair trade legislation was debatable when the first Fair Trade acts were passed in California in 1931, and in New York and Illinois in 1935. The debate continues unresolved to this day. Where such questions of fact are fairly debatable, this court does not substitute its judgment for that of the General Assembly but accepts and carries into effect its declared policy. As in the earlier case, we are concerned with whether the Fair Trade Act squares with constitutional safeguards—not whether the members of this court agree with the economic and social philosophy reflected by the statute. Defendants urge that we re-examine and overrule the *Triner case.* That decision has been the established law of Illinois for 22 years and, in the orderly administration of justice, should be deemed controlling until and unless the General Assembly provides otherwise. Accordingly, to the extent that defendants make the same contentions decided adversely to them in the *Triner* and *Seagram* cases, we adhere to and reaffirm the disposition made of the contentions in those cases.

In the *Triner case,* we said: "It is argued that section 2 delegates to such individuals as choose to avail themselves of the benefits of the statute the power to regulate the prices of commodities sold by others. The contention, and the argument supporting it, rest upon the unwarranted assumption that the Fair Trade act is primarily, and not incidentally, a price-fixing statute." (363 Ill. 559, at p. 581.) The primary purpose of the statute, it was pointed out, was the "preservation and protection of the property interest of the producer and his distributors in the good will represented by brands, trade-marks and trade-names." 363 Ill. 559, at p. 579.

In *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* 299 U.S. 183, 81, L. ed. 109, the United States Supreme Court held that a non-signer was subject to section 2 of the Fair Trade Act for the reason that he purchased the trademarked merchandise with knowledge of the fair trade contract, impliedly assented to the contract and, by his implied assent, ratified, became a party to, and was bound by, the contract.

In the *Triner case* we stated that the Fair Trade Act would remain ineffective until and unless the conditions which it prescribes are satisfied, observing: "The plaintiff, for example, is not commanded to operate under it. Only in the event that manufacturers or distributors elect to avail themselves of its provisions does the statute come into actual operation. This does not mean that the act took effect upon the approval of any authority other than the legislative branch of our State government." 363 Ill. 559, at p. 582.

Similarly, in *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* 299 U.S. 183, 192, the United States Supreme Court, in rejecting the contention that the Fair Trade Act unlawfully delegated power to private persons to control the disposition of the property of others, observed: "It is clear that this section [1] does not attempt to fix prices, nor does it delegate such power to private persons. It *permits* the designated private persons to contract with respect thereto. It contains no element of compulsion but simply legalizes their acts, leaving them free to enter into the authorized contract or not as they may see fit." Recent decisions in other jurisdictions confirm and fortify our conclusion.

Fair Trade acts have been sustained by eight courts of last resort since 1952. *General Electric Co.* v. *Klein,* (Del. 1954) 106 A.2d 206; *General Electric Co.* v. *Kimball Jewelers, Inc.* (1956) 333 Mass. 665, 132 N.E.2d 652;

*Lionel Corp.* v. *Grayson-Robinson Stores, Inc.* (1954) 15 N.J. 191, 104 A.2d 304; *Burche Co.* v. *General Electric Co.* (1955) 382 Pa. 370, 115 A.2d 361; *General Electric Co.* v. *Telco Supply, Inc.* (1958) 84 Ariz. 132, 325 P.2d 394; *Scoville Mfg. Co.* v. *Skaggs Pay Less Drug Stores,* (1955) 45 Cal.2d 881, 291 P.2d 936; *General Electric Co.* v. *Masters, Inc.* (1954) 307 N.Y. 229, 120 N.E.2d 802; *Bulova Watch Co.* v. *Anderson,* (1955) 270 Wis. 21, 70 N.W.2d 243.

The New York Fair Trade Act, for all practical purposes identical with the Illinois statute, has been held valid against repeated attacks. (*General Electric Co.* v. *Masters, Inc.* 307 N.Y. 229.) The course of the non-signer provision of the New York act is illuminating. Originally, it was held unconstitutional in 1936. (*Doubleday, Doran & Co.* v. *R. H. Macy & Co.* (1936) 269 N.Y. 272, 199 N.E. 409.) Later in 1936 came *Old Dearborn* and when the New York Fair Trade Act was again considered its validity was sustained. (*Bourjois Sales Corp.* v. *Dorfman,* (1937) 273 N.Y. 167, 7 N.E.2d 30.) In that case, the court said: "Had the Seagram [Old Dearborn] case been decided before argument in the Doubleday Case, we certainly would have followed the Supreme Court's ruling on the Federal Constitution. We do so now." (273 N.Y. 167, at p. 172.) When the validity of the Fair Trade Act was again presented in 1954, the New York Court of Appeals said: "Seventeen years ago we disposed of the delegation of power and due process arguments in the Bourjois case, supra. Even though our opinion did not separately and specifically discuss those issues as arising under the State Constitution, they were actually presented and argued to our court, were necessarily disposed of by our decision there, and are therefore no longer open to question." *General Electric Co.* v. *Masters, Inc.* 307 N.Y. 229.

In *General Electric Co.* v. *Klein,* (Del.) 106 A.2d 206, sustaining the validity of the non-signer provision of the

Fair Trade Act, it was pointed out that the constitutional provisions invoked had the same meaning as the due process clause of the Federal constitution, and that due process questions had been disposed of in *Old Dearborn*. Similarly, in *Lionel Corp.* v. *Grayson-Robinson Stores, Inc.* 15 N.J. 191, in reaffirming the constitutionality of the non-signer provision of the New Jersey Fair Trade Act, the court said: "We find no basis pertinent to the resolution of the constitutional questions involved upon which to differentiate the Illinois statute considered in the Old Dearborn case, supra, from the New Jersey Fair Trade Act. * * * It is our conclusion that the Old Dearborn case, supra, has not been overruled by the United States Supreme Court and is dispositive here."

Defendants cite decisions of the highest courts of fourteen States describing the non-signer provisions of Fair Trade acts as price-fixing legislation and declaring them invalid. Those authorties are not in harmony with our decisions in the *Triner* and *Seagram* cases, nor, in our opinion with *Old Dearborn Distributing Co.* v. *Seagram-Distillers Distributing Co.* 299 U.S. 183, 81 L. ed. 109.

Defendants contend, further, that the statute unlawfully deprives non-signers of property without due process in compelling them to sell a product at a fixed price without regard to whether they had knowledge of the fixed price at the time of the acquisition of the product. Although the complaint does not allege that defendants had knowledge of plaintiff's fair trade contract, or the prices stipulated pursuant thereto, when they acquired the merchandise in question, it does allege that they had knowledge at the time of making the sales. Defendants do not disclaim knowledge of plaintiff's fair trade contract at the time they acquired its merchandise. Their objection is that the decree does not specifically so find. Lack of knowledge is, of course, an affirmative defense (*James Heddon's Sons* v. *Callender*, (D. Minn. 1939) 29 F. Supp. 579; *Seagram-*

*Distillers Corp.* v. *Seyopp Corp.* (1938) 2 N.Y. Supp. 2d 550) ; which defendants, for reasons best known to themselves, did not see fit to interpose. Had defendants purchased without knowledge they should have so stated by way of defense. This, they failed to do.

The next constitutional contention is new. Defendants contend that the Fair Trade Act is unconstitutional, insofar as applicable to interstate commerce, because it was enacted prior to the Miller-Tydings amendment to the Sherman Anti-Trust Act and the McGuire amendment to the Federal Trade Commission Act, and, hence, was contrary to the provisions of the Sherman Act in existence at the time of the enactment of the Fair Trade Act in 1935. In 1937, the Miller-Tydings Act became effective. (15 U.S.C.A. par. 1.) It exempted contracts or agreements prescribing minimum prices for the resale of trade-marked commodities from the prohibition of the Sherman Anti-Trust Act where such contracts or agreements were lawful as applied to intrastate transactions under local law. The McGuire Act became law in 1952. (15 U.S.C.A. par. 45.) The McGuire Act recognized the rights of the States to authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities in interstate commerce and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. In short, the McGuire Act resolved the conflict existing theretofore between the Sherman Act and the non-signer provisions of State Fair Trade acts.

In the meantime *Schwegmann Bros.* v. *Calvert Distillers Corp.* 341 U.S. 384, 95 L. ed. 1035, held that the Miller-Tydings Act did not exempt the non-signer provisions of State Fair Trade acts from the operation of the anti-trust laws and that they were violative of the Sherman Act. Reliance upon *Schwegmann* cannot, however, avail defendants. The question whether the non-signer provisions of the Miller-Tydings Act involved an unlawful delegation of

legislative power to private individuals was not presented for decision. Indeed, no constitutional question was involved in the first *Schwegmann case* which merely held that Miller-Tydings Act did not immunize the non-signer provisions of Fair Trade acts from the operation of Federal anti-trust acts. The McGuire Act cured this defect. The constitutional validity of the McGuire Act was sustained in the second *Schwegmann case*. (*Schwegmann Bros. Giant Supermarket* v. *Eli Lilly & Co.* (5th cir. 1953) 205 F.2d 788.) The United States Supreme Court denied *certiorari*. 346 U.S. 856, 98 L. ed. 369, rehearing denied, 346 U.S. 905, 98 L. ed. 404.

The applicable rule is that where a State statute is adjudged unconstitutional because it conflicts with Federal legislation, the State statute is, in effect, merely unenforceable or suspended by the existence of the Federal legislation. This being so, repeal of the Federal statute reinstates or revives the State law without express re-enactment by the State legislature. (1 Sutherland on Statutory Construction, 3d ed., Horack, sec. 2027, p. 501; Field, The Effect of an Unconstitutional Statute, (1935) p. 286, *et seq.; Burche Co.* v. *General Electric Co.* 382 Pa. 370; *General Electric Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665; *General Electric Co.* v. *Masters, Inc.* 307 N.Y. 229; *General Electric Co.* v. *Packard Bamberger & Co., Inc.* (1953) 14 N.J. 209, 102 A.2d 18; *Quality Oil Company, Inc.* v. *E. I. duPont deNemours and Company, Inc.* (1958) 182 Kan. 488, 322 P.2d 731.) Section 2 of our Fair Trade Act does not contravene the Sherman Anti-Trust Act, and it was not invalid and void *ab initio* when enacted in 1935. Re-enactment subsequent to the passage of the McGuire Act was unnecessary.

Defendants also contend that injunctive relief is not a proper remedy for unfair competition under the Fair Trade Act, insisting that an action at law is the exclusive remedy. Specifically, they maintain that the language of section 2

"actionable at the suit of any person damaged thereby," clearly implies an action at law for damages. The only authority relied upon is *Calvert Distillers Co.* v. *Wish,* (N.D. Ill. 1957) 162 F. Supp. 364. The familiar remedy of injunction to prevent unfair competition has long been recognized. The proscribed conduct is declared to be "unfair competition" by section 2. Unfair competition likely to extend into the future is deemed to cause irreparable injury and, consequently, equity has jurisdiction of an action to prevent unfair competition and to grant relief by way of injunction. (See: *Standard Oil Co. of Maine, Inc.* v. *Standard Oil Co. of New York,* (1st Cir. 1950) 45 F.2d 309.) In *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* 363 Ill. 610, this court held that, upon the record made, the plaintiff was entitled to equitable relief by injunction. Like results have been reached elsewhere. Construing language identical with that employed in section 2 of our Act, the court, in *Eli Lilly Co.* v. *Saunders,* (1939) 216 N.C. 163, 4 S.E.2d 528, 540, said: "Under such general authorization an action to permanently restrain defendant from the practices complained of is proper." And, in *Miles Laboratories, Inc.* v. *Seignious,* (E.D. S.C. 1939) 30 F.Supp. 549, 555, the court said: "When the legislature used the words 'unfair competition,' it in effect said that in enforcing the statute the usual remedies against the unfair competition were to be administered by the courts." The fact that several State Fair Trade acts have specifically provided for injunctive relief is not a bar to a person damaged by unfair competition from an injunction in the absence of such a statutory provision.

Defendants maintain, further, that plaintiff has an adequate remedy of self-help. The sole authority cited to sustain its contention is *Calvert Distillers Co.* v. *Wish,* 162 F. Supp. 364, which expressed the view that the simple expedient of refusing to sell fair-traded products to retailers who refuse to enter into its fair trade agreement would

afford an aggrieved party such as the present plaintiff an adequate remedy. Here, the plaintiff does not sell to retailers. The only practicable way, therefore, for plaintiff to stop the sale of its products to defendants would be a requirement that its distributors refuse to deal with them. But, as pointed out in *General Electric Co. v. R. H. Macy & Co.* 103 N. Y. Supp. 2d 440, 449: "Nor is there any requirement that General Electric change its system of merchandising through distributors. Similarly, there is no requirement that General Electric enter into agreements with distributors to cut off violators. Indeed, the latter course may involve General Electric in a violation of the Anti-Trust Laws. [Citations.] The policy of the Fair Trade Law allowing vertical price fixing runs directly counter to the policy of the anti-trust law and the common law. It represents a small area situate in otherwise prohibited territory. Provisions for enforcement are contained in the statute. To go beyond the limits of the statute for enforcement would be to tread on dangerous ground."

Defendants also insist that the fair trade contract relied upon by plaintiff lacks mutuality and consideration and is, accordingly, invalid and unenforceable. It is fundamental that each party or promisor to a bilateral contract must be bound or neither is bound. (*Higbie v. Rust,* 211 Ill. 333; *Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory,* (1921) 231 N.Y. 459, 132 N.E. 148; *Wood v. Lucy, Lady-Duff-Gordon,* (1917), 222 N.Y. 88, 118 N.E. 214; *International Shoe Co. v. Herndon,* (1926) 135 S.C. 138, 133 S.E. 202.) Here, defendants urge that plaintiff does not agree to do or refrain from doing anything. Defendants' analysis of the challenged fair trade contract is that the retailer agrees not to sell within Illinois at other than the resale price from time to time designated by plaintiff; that plaintiff shall have the right to revise or change any resale prices, in accordance with written schedules furnished from time to time by it; that the retailer shall not give any arti-

cle of value, rebate or refund which may change the resale price; that, in the event of the sale of his business, the retailer shall require, as a condition of such sale, that the successor transferee be bound by the provisions of the agreement on the retailer's part to be performed. Accordingly, defendants assert that the fair trade contract is a unilateral undertaking by the retailer, weighted with all of its burdens, penalties and restrictions.

Defendants' contention was summarily rejected in *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* 363 Ill. 610. Recent authorities are in accord with our earlier conclusion. In *General Electric Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 132 N.E.2d 652, 655, the court observed, in holding similar fair trade contracts to be supported by ample consideration: "The execution of the contract by the dealer might well have been thought to be a benefit to him, otherwise he would not have signed it. He might well have thought that the making of the contract would tend to free him from cut rate competition, or lessen the competition, in one branch of his business and that the more signers the plaintiff secured in the trade area served by the dealer the better it would be for the dealer. The dealer executed the contract freely and voluntarily and secured for his own benefit the establishment of a fair trade program. The fact that plaintiff could immediately add to, diminish or withdraw the items contained in the price list of articles would not render the contract invalid if valid in other respects." See: *Seagram Distillers Co.* v. *Corenswet,* (1955) 198 Tenn. 644, 281 S.W.2d 657.

We are of the opinion that retailers obtain from fair trade agreements the liquors which they sell and other benefits in the nature of substantial benefits of price support, freedom from unfair competition in the sale of trademarked merchandise, and prompt notice of changes in minimum resale prices which occur as a result of the very nature of a competitive economy.

Finally, defendants contend that the fair trade contract upon which plaintiff places reliance does not contain the immediate vendee relationship required by section 1 of our Fair Trade Act. (Ill. Rev. Stat. 1957, chap. 121½, par. 188.) Plaintiff, as previously noted, is a distributor which sells its products to wholesale distributors in the State who, in turn, sell to retailers. Plaintiff does not sell directly to retailers. The agreement attacked is between plaintiff and a retailer. Defendants assert that plaintiff, under its method of distribution, could have entered into agreements conformably with section 1 but, instead, that it chose to enter into contracts directly with retailers to whom it does not sell the products in question, thereby bypassing the wholesalers who sell to the retailers.

Defendants' argument ignores the legislative intention manifested by the use of the words "relating to the sale or resale" which modify the word "contract" in the opening sentence of section 1: "No contract relating to the sale or resale of a commodity * * * shall be deemed in violation of any law of the State of Illinois by reason of any of the following provisions which may be contained in such contract: (1) That the buyer will not resell such commodity except at the price stipulated by the vendor." The contracts which plaintiff uses relate to the resale of trademarked commodities and do not purport to be contracts of sale.

Defendants' contention has been rejected in other jurisdictions. Construing statutory provisions precisely the same as those challenged here, the Massachusetts Supreme Judicial Court held that use of the words "vendor" and "buyer" in section 1(1) does not require that one party to the contract be the other party's immediate vendee. In *General Electric Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 132 N.E.2d 652, 656, the court observed: "It must be remembered that involved in the sale to the customer is an article which includes the manufacturer's trade mark. It well may

be that it was this trade mark that induced the sale. A fair trade contract may be made between a producer and a retailer who do not trade directly with each other. The statute applies not only to contracts between the parties, but to any contract 'relating to the sale or resale of a commodity' whether the sale is between the parties or not, because the object is to protect the trade mark, brand or name of the producer or owner, whosoever makes the sale." And, in *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* 363 Ill. 610, 612, we stated that contracts with retailers to whom the plaintiff-distributor did not sell were "in conformity with the terms of the Fair Trade act."

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*