MEAD JOHNSON & COMPANY
v.
WEST CHESTER DISCOUNT, HEALTH & VITAMIN CENTER, INC.
Civ. A. No. 31997.

United States District Court
E. D. Pennsylvania.
Dec. 31, 1962

Francis Hopkinson, Robert S. Ryan, of Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Samuel M. Tollen, Chester, Pa., for defendant.

FREEDMAN, District Judge.

This is a fair trade case in which the plaintiff seeks a preliminary injunction against a retail discount store. The basic facts are undisputed.

A number of interesting questions are presented, each of which warrants separate consideration.

1. The fair trade contract which establishes the prices plaintiff seeks to maintain is with a pharmacy. Admittedly plaintiff sells none of its products to the pharmacy or to any other retailers; all its sales are to wholesalers, hospitals and nursing homes. The contract provides that whereas the plaintiff's com-

modities are trademarked and are in fair, free and open competition with commodities of the same general class produced by others, and the parties to the contract desire to avail themselves of the benefit of the Fair Trade Act, therefore, in consideration of the premises and the mutual obligations assumed in the contract the parties agree, inter alia, that the pharmacy (the retailer) will not advertise, offer for sale, or sell any of the commodities at less than the "minimum retail price stipulated" by the plaintiff.

■ Defendant contends that the contract lacks consideration because only the retailer is bound to any promises whereas the plaintiff is not bound to do anything. It is urged that even if the contract may have formal validity, it is not enforceable in equity. This argument misconceives the underlying purpose of the Fair Trade law and its requirement of a contract in which the fair trade price is stipulated. It was not until Congress passed the McGuire Act (15 U.S.C.A. § 45) that retailers who were not contracting parties could be bound by the fair trade price. But the McGuire Act was adopted to meet the pressure in the various states for statutory recognition that once a price was established with one contractee all those on the same level of competition who had notice of the established price were bound to comply with it. Whatever one's view may be of the wisdom of the economic and social policies embodied in Fair Trade laws, it is clear that the so-called contract is simply a datum point whose consequences reach far beyond the individual retailer who signs it. As to him, so far as the manufacturer is concerned, it is relatively insignificant. Its true function is not so much to bind the individual retailer who signs it as it is to establish through him a stipulated price which then binds all others in the same class, however numerous they may be and however unwilling they may be to comply with the stipulated price, as long as they have notice of it. Theoretically the policy of the Act could perhaps as easily have been enforced by a requirement for the recording in a public office of a stipulated price which then would bind all those in the class specified who received notice of the recorded price. But the legislation is framed on the concept of a contract. We must give obedience to the concept which the legislature adopted, but in so doing we may not ignore the legislative purpose.

■ I believe there is consideration for the agreement. As a retail pharmacy the contractee—unlike the defendant, which is a discount house—is to be presumed from the language of the contract to have desired to secure the benefits of the Fair Trade Act. For this reason he signed a contract which contained such a recital and therein he expressly agreed that he would not advertise, offer for sale, or sell any of the plaintiff's commodities at less than the minimum retail prices stipulated by the plaintiff. By such a contract not only did the plaintiff obtain the lever for the enforcement of the Fair Trade Act, but the contractee also obtained the protection of the Fair Trade Act and thereby was sheltered against price cutting. This I believe is consideration adequate not only to sustain the contract but also to justify its enforcement in equity. Especially is this true when we consider that the contract is under the law the means to a remedy much broader in scope and purpose, a purpose no less than the maintenance of the minimum prices therein stipulated throughout this area.[1]

■ Nor is the contract invalid because it was made with a retailer where-

1. Consideration has been found to exist in contracts such as this in Revere Copper and Brass, Inc. v. Grayson-Robinson Stores, Inc., 1954 Trade Cases par. 67806 (S.D.N.Y.); Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc., 15 Ill.2d 182, 154 N.E.2d 290, 297 (1958); General Electric Co. v. Kimball Jewelers, Inc., 333 Mass. 665, 132 N.E.2d 652, 654–655 (1956); Houbigant Sales Corp. v. Woods Cut Rate Store, 123 N.J.Eq. 40, 196 A. 683, 686–687 (1937); General Electric Co v. S. Klein-On-The-Square, Inc., Sup., 121 N.Y.S.2d 37, 45–46 (1953).

as, in fact, plaintiff does not sell to retailers, but only to wholesalers, hospitals and nursing homes. The fact that plaintiff has made no sales to the pharmacy, while formally unusual in a traditional common law contract, is not significant. There was a contract which in the language of § 1 of the Pennsylvania statute (73 P.S. § 7) was one *"relating to* the sale or resale" of the plaintiff's commodities.[2] It does not lose its effect because plaintiff's commodities were sold to wholesalers and did not pass directly from plaintiff to the contractee. Both parties to the contract were served by its provisions and this constituted, as we have already shown, adequate consideration for it.

■ 2. Defendant argues that plaintiff's efforts to fix prices for its commodities fails because the Pennsylvania statute provides for "a price stipulated" in the contract, whereas plaintiff's contract provides that the contractee will not sell plaintiff's commodities "at less than the *minimum* retail prices stipulated" by plaintiff. Such a variance was held to be fatal in a decision later discredited.[3] There is a conflict in Pennsylvania lower court decisions on the subject.[4] The Supreme Court of Pennsylvania has not spoken directly on the subject, but it has dealt with cases involving contracts specifying minimum prices without commenting on their variation from the statutory language. See Burche Co. v. General Electric Co., 382 Pa. 370, 115 A.2d 361 (1955); Lentheric, Inc. v. F. W. Woolworth Co., 338 Pa. 523, 13 A.2d 12 (1940).

I consider the specification of a minimum retail price to be within the statutory authority to establish a stipulated price. To fix a minimum retail price is an exercise of the power to stipulate a retail price. Indeed, it may well be said that the fixing of a minimum retail price is an exercise of some, but not all, of the authority conferred by the statutory right to set a stipulated price. This I think is in harmony with the language of the Act and with its broad purpose, which is aimed at the evil of price cutting. In Mead Johnson & Company v. Martin Wholesale Distributors, Inc., 408 Pa. 12, 15, 182 A.2d 741, 743 (1962), Mr. Justice Musmanno said: "The theory behind Fair Trade legislation is that when a meritorious product acquires a certain good standing with the public, it is necessary to uphold its standard by prohibiting its sale at prices which presumably would be below or close to the cost price. If one dealer cuts prices below or close to the cost price, another dealer may cut even lower. This, then, could be followed by still further lower cutting * * *. Whether this line of reasoning comports with good economies [economics?], good logic and the kind of rivalry which generally is upheld in our private enterprise system is * * * not for this Court to pass upon." See also Lentheric, Inc., v. F. W. Woolworth Co., 338 Pa. 523, 13 A.2d 12 (1940). Nor do I think the variance in the language of the Pennsylvania statute from that of some other states which limit the stipulated price to a minimum price is any indication of a legislative purpose to require that in all fair trade cases in Penn-

2. See Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc., 15 Ill.2d 182, 154 N.E.2d 290, 297–298 (1958); General Electric Co. v. Kimball Jewelers, Inc., 333 Mass. 665, 132 N.E.2d 652, 655–656 (1956); Seagram Distillers Co. v. Corenswet, 198 Tenn. 644, 281 S.W.2d 657, 660 (1955), quoting from Calvert Distillers Corp. v. Nussbaum Liquor Store, 166 Misc. 342, 2 N.Y.S.2d 320, 325 (1938).

3. Mennen Co. v. Krauss Co., Ltd., 37 F. Supp. 161 (E.D.La.1941), reversed per

curiam 134 F.2d 348 (5th Cir., 1943) on authority of intervening decision of Pepsodent Co. v. Krauss Co., Ltd., 200 La. 959, 9 So.2d 303 (1942).

4. Upjohn Co. v. Chester Discount Health and Vitamin Center, Inc., C.P.Del.Co., No. 1354, Dec. Term 1961, Toal, J., holding that the Pennsylvania Fair Trade Act did not legalize minimum resale price contracts; Abbott Laboratories v. Breggar, C.P. No. 4 Phila.Co., No. 897, March Term 1961, Brown, Jr., J., contra.

sylvania the manufacturer or producer must, to obtain the benefits of the Act, fix a maximum as well as a minimum price. This is demonstrated by the absence of any proscription in the Pennsylvania Act against a sale above the stipulated price, although a sale *below* the stipulated price is declared unlawful (§ 2, 73 P.S. § 8). It is, it seems to me, conclusively confirmed by the language of the Miller-Tydings amendment. Adopted in 1937 it established the constitutionality of fair trade laws as to commodities sold in interstate commerce in language which remained unaltered until the adoption of the McGuire amendment in 1952. The Miller-Tydings amendment excepted from the Sherman Act fair trade contracts "prescribing *minimum* prices". If "a price stipulated" in a fair trade contract, under Pennsylvania's Fair Trade Act adopted in 1935, is something different from or less than "minimum prices", then the Pennsylvania statute was never made effective by the Federal authorization. One must recoil from such a conclusion, so at war with the unbroken line of Pennsylvania authority. Yet this disparity in language between the Federal and Pennsylvania legislation continued until 1952. At that time the McGuire amendment was adopted in order to apply fair trade prices to non-signers of a fair trade contract. See Burche Co. v. General Electric Co., 382 Pa. 370, 374–375, 115 A.2d 361 (1955). In the McGuire amendment there appears for the first time language authorizing enforcement of contracts "prescribing minimum or stipulated prices". There would appear to be no reason why a "minimum" price may not be "stipulated", nor, conversely, why a "stipulated" price may not be a "minimum" price.

■■ 3. It is urged that plaintiff's admitted sales to hospitals and nursing homes make it a competitor of the defendant. Both the Miller-Tydings and the McGuire amendments provide that fair trade prices may not be enforced "between persons, firms, or corporations in competition with each other".

The provisions of the Federal statutes have been given a broad interpretation by the Supreme Court. See United States v. McKesson & Robbins, Inc., 351 U.S. 305, 76 S.Ct. 937, 100 L.Ed. 1209 (1956). The effect of these provisions is that a manufacturer or producer cannot sell to one and at the same time compete with him. Esso Standard Oil Co. v. Secatore's, 246 F.2d 17 (1st Cir., 1957), cert. den. 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957). There is no such competition shown in the present case. Nor, indeed, can any such competition even be inferred from the undisputed facts. Plaintiff does not sell to retailers and the sales to hospitals and nursing homes, as revealed in the evidence, are not sales at retail. Plaintiff's price to these institutions is the same as that to wholesalers. I believe this is a valid and realistic distinction and that such sales do not put plaintiff in competition with the defendant or with the retail drugstore which signed a fair trade contract.[5]

It is conceded that if the defenses which we have discussed do not stand in the way, plaintiff is entitled to a preliminary injunction. I find these defenses inadequate and a preliminary injunction accordingly will be entered.

To the extent that what I have said constitutes Findings of Fact and Conclusions of Law, this Opinion shall be treated as containing them. In addition I affirm plaintiff's Requests for Findings of Facts Nos. 1–14, inclusive and plaintiff's Requests for Conclusions of Law Nos. 1–3, inclusive. All other Requests for Findings of Fact and Conclusions of Law not in harmony with those stated in this Opinion and not here expressly affirmed, are severally denied.

---

5. See Olin Mathieson Chemical v. West Chester Discount Health & Vitamin Center, Inc., C. P. Chester Co., No. 1545, Oct. 27, 1962.